224 N.J. Super. 72 (1987)
539 A.2d 769
STATE OF NEW JERSEY, PLAINTIFF,
v.
HERIBERTO MORALES, MARVIN HOLLY, PAUL HAMILTON, CARLOS CASTILLO, JOHNNY RIVERA, MARGARITA MARTINEZ, MCCOY SMITH, WILLIAM PAGAN, GLEN BOUIE, CARLOS PINTO, JAMIE ARROYO, EVELYN RIVERA AND RONNIE WILLIAMS.
Superior Court of New Jersey, Law Division Passaic County.
November 10, 1987.
*75 Steven E. Braun, for plaintiff (John P. Goceljak, Acting Prosecutor of Passaic County, attorney).
Terence P. Corcoran, for defendants.
MARTIN, J.S.C.
Thirteen defendants move to dismiss various indictments pending against them alleging violations of the Comprehensive Drug Reform Act of 1986. Specifically they allege that the charging statute, N.J.S.A. 2C:35-7, is not only itself unconstitutional, but also as it relates to and interacts with N.J.S.A. 2C:35-5 and -12. The several allegations will be considered seriatim under separate headings.
N.J.S.A. 2C:35-7 provides in part:
Any person who violates subsection a. of N.J.S. 2C:35-5 by distributing, dispensing or possessing with intent to distribute a controlled dangerous substance or controlled substance analog while on any school property used for school purposes which is owned by any elementary or secondary school or school board, or within 1,000 feet of any school property or school bus, or while on any school bus, is guilty of a crime of the third degree and shall, except as provided in N.J.S. 2C:35-12, be sentenced by the court to a term of imprisonment.

POINT I.

Is N.J.S.A. 2C:35-7 vague and therefore unconstitutional?
Underlying the vagueness and overbreadth (Point II) arguments of defendants is the acknowledged absence of any factual information for the court's evaluation, excepting the statement at oral argument that each defendant is charged with the intent to disburse controlled dangerous substances within 1,000 feet of school property, school bus, or while on a school bus.[1]
*76 Vagueness whether facial or as applied is a procedural due process concept which requires that statutes be worded in such a way that persons of ordinary intelligence can comprehend what conduct is proscribed. Connally v. General Construction Co., 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926); State v. Sharkey, 204 N.J. Super. 192 (App.Div. 1985).
State v. Cameron, 100 N.J. 586 (1985) addresses the applied vagueness question by stating that
[a] party may test a law for vagueness as applied only with respect to his or her particular conduct; if a statute is vague as applied to that conduct, it will not be enforced even though the law might be validly imposed against others not similarly situated. Conversely, if a statute is not vague as applied to a particular party, it may be enforced even though it might be too vague as applied to others. [Id. at 593]
We do not deal in terms of possible vagueness but rather in terms of specific behavior. State v. Lee, 96 N.J. 156 (1984).
Facial vagueness evaluations are subject to a similar analysis. Town Tobacconist v. Kimmelmen, 94 N.J. 85 (1983). A court cannot declare a statute unconstitutionally vague predicated on hypothetical situations. Ibid.; State v. Jones, 198 N.J. Super. 553 (App.Div. 1985). One is not permitted to mount a constitutional attack where it may readily, as to the proponent, be held to be constitutional. State v. Cappon, 118 N.J. Super. 9 (Law Div. 1971).
As the Appellate Division has held:
The void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient clarity "that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." Kolender v. Lawson, 461 U.S. 352, 358, 103 S.Ct. 1855, 1859, 75 L.Ed.2d 903 (1983). See also Village of Hoffman Estates v. Flipside, 455 U.S. 489, 494, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362, 368 (1982), reh. den. 456 U.S. 950, 102 S.Ct. 2023, 72 L.Ed.2d 476 (1982). See also State v. Lee, supra, 96 N.J. [156] at 165; Town Tobacconist v. Kimmelman, 94 N.J. 85, 118 (1983); State v. Lashinsky, 81 N.J. 1, 17 (1979). Where the statute does not provide precise guidelines, it may permit "a standardless sweep [that] *77 allows policemen, prosecutors, and juries to pursue their personal predilections." Smith v. Goguen, 415 U.S. 566, 575, 94 S.Ct. 1242, 1248, 39 L.Ed.2d 605, 613 (1974). The test, however, "does not consist of a linguistic analysis conducted in a vacuum." In re Suspension of DeMarco, 83 N.J. 25, 37 (1980). Rather, the statute must be read within the context of the "reality to which the provision is to be applied." Ibid. Applying these standards, we are fully satisfied that N.J.S.A. 2C:39-7 is sufficiently precise in its language to apprise the citizenry of the conduct proscribed. In our view, the statute provides fair notice of the activities prohibited and does not constitute "a trap for a person of ordinary intelligence acting in good faith." State v. Lee, supra, 96 N.J. at 166. See also State v. Wright, 96 N.J. 170 (1984). We are also satisfied that the statute is sufficiently definitive in its terms to preclude arbitrary and discriminatory enforcement. [State v. Jones, 198 N.J. Super. 553, 563-564 (App.Div. 1985)]
In so far as the court can ascertain on its own, these defendants are not charged with violating the comprehensive drug law with respect to a "school bus," but rather violating the 1,000-foot zone as outlined in N.J.S.A. 2C:35-7, regarding school property. In this regard, the language is quite specific.[2]
Clearly 1,000 feet is a determinable distance. It can easily be measured. School property and school bus (limited to the statute  while on a school bus) are ascertainable entities to the average layman. Consequently, whether as to facial or applied considerations, these sections of the statute are constitutional. The language and application are clearly  readily  capable of comprehension. This is especially evident when considering the following guideline; "simply because the prohibited behavior is not susceptible to precise definition need not lead to legislative paralysis," State v. Curtis, 195 N.J. Super. 354, 367 (App.Div. 1984), certif. den. 99 N.J. 212 (1984), and by comparing the language under consideration, as to clarity, to that in N.J.S.A. 2C:39-5d "under circumstances not manifestly *78 appropriate for such lawful uses as it may have is guilty of a crime of the fourth degree" which was specifically upheld in State v. Lee, supra, 96 N.J. at 165. See also for favorable comparison, State v. Joas, 34 N.J. 179 (1961) as to careless driving; State v. Sharkey, supra as to N.J.S.A. 24:21-19.1.a.(3), circumstances leading to a belief concerning controlled dangerous substances; Town Tobacconist v. Kimmelman, supra, as to the Drug Paraphernalia Act, N.J.S.A. 24:21-46 to -53; plus the listed matters in Matter of Hotel and Restaurant Emp. and Bartend., 203 N.J. Super. 297 (App.Div. 1985), certif. den. 102 N.J. 352 (1985), all of which withstood challenges as to vagueness.
The attack as to "within 1,000 feet of any ... school bus" is predicated upon hypotheticals and, therefore, as previously indicated not factually anchored in this proceeding, making it, therefore, subject to a valid "standing" argument. Although not addressed herein for dismissal purposes because of this defect, it is interesting to note that when it must be evaluated, the guidelines for doing so may be already established.
Admittedly, there may in fact be a future instance in which the decision to prosecute is ill-advised, unfair, or even discriminatory. Yet this is neither more nor less than the risk of unfairness inherent in many criminal statutes. That there may be a borderline area where application of the law is vague does not render the entire statute void for vagueness unless that borderline area is so broad that it covers practically the entire statute. As the Supreme Court said in United States v. Petrillo, 332 U.S. 1, 67 S.Ct. 1538, 91 L.Ed. 1877 (1947):
That there may be marginal cases in which it is difficult to define the side of the line on which a particular fact situation falls is not sufficient reason to hold the language too vague to define a criminal offense.... [T]he Constitution does not require impossible standards. Id. at 7, 67 S.Ct. at 1542 [Town Tobacconist v. Kimmelman, supra, 94 N.J. at 124]
Although criminal statutes require stringent review, provided procedural and judicial safeguards are present, statutory phases are not required to be "impeccable specimens of draftsmanship." Matter of Hotel and Restaurant Emp. and Bartend., supra, 203 N.J. Super. at 328.

*79 POINT II.

Is N.J.S.A. 2C:35-7 overbroad, and therefore, unconstitutional?
Overbreadth as distinguished from vagueness rests on substantive due process principles. The question posed is reach, not clarity. Has the State extended its interest further than permitted? The interest under consideration is stated in
N.J.S.A. 2C:35-1.1(c):
It is also the policy of this state to afford special protection to children from the perils of drug trafficking, to ensure that all schools and areas adjacent to schools are kept free from drug distribution activities, and to provide especially stern punishment for those drug offenders who operate on or near schools and school buses, who distribute to juveniles, or who employ juveniles in a drug distribution scheme.
This language makes it abundantly clear that the Legislature intended to protect school children from drugs and in doing so has created an area (1,000-foot zone) wherein drug activity is prohibited.
The overbreadth doctrine surfaces when a law "does not aim specifically at evils within the allowable area of [government] control but sweeps within its ambit other activities that in ordinary circumstances constitute an exercise" of protected rights, first amendment rights predominantly. Thornhill v. Alabama, 310 U.S. 88, 97, 60 S.Ct. 736, 742, 84 L.Ed. 1093 (1940). Generally overbreadth arguments are First Amendment oriented. State v. Jones, supra. In this matter no pure First Amendment rights are implicated,[3] nor is the conduct itself protected. The dealing in drugs, and the use of drugs as controlled dangerous substances is illegal in New Jersey. Town Tobacconist v. Kimmelman, supra.
The police power of the State Legislature is as great as, if not greater than, that of a municipality in the area of state-wide policy relating to public health, safety and welfare. *80 Quick Chek Food Stores v. Springfield Tp., 83 N.J. 438 (1980). In this regard it is interesting to note the case of Mister Softee v. Mayor and Counsel of Hoboken, 77 N.J. Super. 354 (Law Div. 1962), holding that the police power of a municipality could be validly exercised to preclude the vending of legitimate wares (ice cream) within 200 feet of a school. If the police power is so exercisable, drugs, an admitted by illegal product, may be precluded from within 1,000 feet of a school predicated upon the clearly expressed state goal of protection of children. The scope of enforcement is not an overbreadth impediment. United States v. Nieves, 608 F. Supp. 1147 (D.C.N.Y. 1985), when considering 21 U.S.C.A. § 845a[4] as to overbreadth held:
The presumption that narcotics sales in the vicinity of an elementary or secondary school endanger the students and thus should be subject to stiffer penalties is substantially related to Congress's interest in shielding these children from the evils of the drug trade. Whether or not a child is involved in or otherwise present during any particular sale of narcotics within one thousand feet of a school, subjecting the seller to enhanced penalties reasonably may be expected to deter the seller and other illicit dealers from conducting their operations near school property in the future. In such areas, where children congregate in large numbers before, during, and after school sessions, they are readily subject to the illicit activities of those who ply narcotics to the victims of drug abuse and addiction. It is difficult to imagine a more rational way of keeping drug traffickers out of areas where children are more likely to come into contact with them than to subject them to a risk of stiffer penalties for doing business near school property. [Id. at 1149-1150]
....
[W]here conduct and not merely speech is involved . .. the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statutes plainly legitimate sweep. [Broadrick v. Oklahoma, 413 U.S. 601, 615, 93 S.Ct. 2908, 2918, 37 L.Ed.2d 830, 842 (1973)]
*81 The 1,000 foot zone proviso "as to school property" and the "while on a school bus" provision are not overbroad.[5]

POINT III.

Does N.J.S.A. 2C:35-7 violate the constitutional prohibition against double jeopardy?
Defendants claim that N.J.S.A. 2C:35-7 violates the constitutional prohibition against double jeopardy in that it prohibits merger with N.J.S.A. 2C:35-5. The State submits that distinct dangers are involved.[6]
The United States Supreme Court has stated that the double jeopardy clause "protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 664-665 (1969); footnotes omitted. The traditional test is outlined in Blockburger v. United States, 284 *82 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). The Court there held "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." Id. at 304, 52 S.Ct. at 182, 76 L.Ed. at 309; see also State v. DeLuca, 108 N.J. 98 (1987). The traditional Blockburger test has subsequently been expanded and is now considered to be just the first prong of a two-prong test. State v. DeLuca, supra. The second prong was originally put forth in State v. Dively, 92 N.J. 573 (1983), namely, whether the evidence actually used to establish guilt in the first prosecution is essential to that which will be used in the second prosecution. "If the same evidence used in the first prosecution is the sole evidence in the second, the prosecution of the second is barred." State v. DeLuca, supra 108 N.J. at 107. Both tests must be looked at and either can bar a subsequent prosecution.
It is defendants' position that since the provisions of the two statutes have identity of elements, merger is required by the double jeopardy protections of both the federal and state constitutions.
The State however argues that New Jersey has adopted a more flexible approach to the merger issue pursuant to State v. Davis, 68 N.J. 69 (1975), and argues that the Legislature may prohibit merger for crimes which represent distinct dangers to society.
As was stated in State v. Davis, "there is no question but that the legislature is empowered to split a single, continuous transaction into stages, elevate each stage to a consummated crime, and punish each stage separately." Id. at 78. Thus it would be necessary to determine whether the Legislature has undertaken to create separate offenses if the double jeopardy question must, in this instance, be resolved.
However, whether the alleged cumulative penalties are an appropriate response to the stated legislative policy and create *83 a merger  double jeopardy  issue which can not withstand constitutional attack need not be addressed since the merger language found in N.J.S.A. 2C:35-7, "a conviction for a violation of subsection a. of N.J.S. 2C:35-5," goes to a sentencing alternative requirement. The intent of the Legislature is to provide for stiffer penalties for those who violate N.J.S.A. 2C:35-7. The merger language is intended to ensure that defendants possibly subject to both sections, cannot avoid the mandatory sentencing provision of N.J.S.A. 2C:35-7 by arguing that the N.J.S.A. 2C:35-7 offense merges totally into N.J.S.A. 2C:35-5. It was intended that the convictions for sentencing purposes relating to mandatory minimums were not to be merged. This being the case it becomes clear that the intent of the Legislature was to ensure that for purposes of sentencing the two offenses would not merge to the exclusion of a mandatory minimum and that a violation of N.J.S.A. 2C:35-7, generally, must result in incarceration. Any other reading of the provisions would allow the clear intent of the Legislature to be subverted.[7] With this analysis the legislative goal is realized and the alleged double jeopardy argument is avoided.

POINT IV.

Is N.J.S.A. 2C:35-7 unconstitutional as it removes intent as a necessary consideration in the commission of a crime?
Defendants have put forth the argument that since the law does not require knowledge (intent) of the proximity to a school, it violates defendants' due process rights. N.J.S.A. 2C:35-7 provides "it shall be no defense to a prosecution for a violation of this section that the actor was unaware that the prohibited conduct took place while on or within 1,000 feet of any school property."
*84 A similar issue attack was made in State v. Des Marets, 92 N.J. 62 (1983), dealing with the sentencing of Graves Act offenders. "The Graves Act provides, generally, that one who uses or possesses a firearm while committing, attempting to commit, or fleeing after the commission of, certain serious offenses specified in that Act shall be mandatorily sentenced to prison for a term that includes at least three years of parole ineligibility." Id. at 64. In that case the Court found "that the actor's state of mind was meant to be irrelevant," id. at 69, stating that "even if a criminal has no intent to use his gun, the possession of a firearm presents definable dangers." Id. at 69-70. The Court determined that it was "the mere presence of guns at the scene of crimes that this statute seeks to end." Id. at 70. It becomes clear from this case that the Legislature, under the proper circumstances, can remove the element of intent if it is necessary to achieve a proper legislative objective.
This point is further highlighted by those cases dealing with 21 U.S.C.A. § 845a on the federal level. The court in United States v. Falu, 776 F.2d 46 (2 Cir.1985), stated that while "it is true that criminal offenses requiring no mens rea have a generally disfavored status ... Congress can dispense with this requirement." Id. at 49. United States v. Holland, 810 F.2d 1215 (D.C. Cir.1987), citing Falu stated "Congress' heightened interest in protecting children from both the indirect and direct perils of drug traffic amply supports its decision not to require a showing of mens rea of the proximity to a school." Id. at 1223. The court there went on to state that "because the knowledge of 21 U.S.C. § 845a is presumed in law, it is reasonable for Congress to have expected drug traffickers to ascertain their proximity to schools and remove their operations from these areas or assume the risk for their failure to do so." Id. at 1224.
In light of the intent of the present statute and the goals it seeks to achieve, it becomes apparent that it is within the bounds of legislative authority to dispense with the intent requirement without violating due process requirements.
*85 Accordingly, defendants' argument on this issue based upon due process considerations fails.

POINT V.

Does N.J.S.A. 2C:35-7 unconstitutionally penalize defendants for exercising their trial rights?
Defendants argue that N.J.S.A. 2C:35-12[8] which provides to the prosecution the right to engage in plea bargaining, including the waiver or modification of parole ineligibility periods, penalizes them for exercising their right to a jury trial. In evaluating this assertion the courts have generally looked to the extent of the statute's application. United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968) held unconstitutional the waiver issue when defendant was facing a life or death choice. A subsequent case, Corbitt v. New Jersey, 439 U.S. 212, 99 S.Ct. 492, 58 L.Ed.2d 466 (1978),[9] however, provides the application analysis which is relevant in this matter.
Corbitt was not a death penalty case, and the punishment was not abrogated by a plea. In establishing the underlying rationale the Corbitt Court stated:
The cases in this Court since Jackson have clearly established that not every burden on the exercise of a constitutional right, and not every pressure or *86 encouragement to waive such a right, is invalid. Specifically, there is no per se rule against encouraging guilty pleas. We have squarely held that a State may encourage a guilty plea by offering substantial benefits in return for the plea. The plea may obtain for the defendant "the possibility or certainty ... [not only of] a lesser penalty than the sentence that could be imposed after a trial and a verdict of guilty ...," Brady v. United States, 397 U.S. 742, 751, 90 S.Ct. 1463, 1470, 25 L.Ed.2d 747 (1970), but also of a lesser penalty than that required to be imposed after a guilty verdict by a jury. [99 S.Ct. 497-498; footnote omitted]
It should further be noted that the act of plea bargaining as a trial-control and sentence-limiting device has already been disposed of by the New Jersey Supreme Court.
The system enables a defendant to reduce his penal exposure and avoid the stress of trial while assuring the State that the wrongdoer will be punished and that scarce and vital judicial and prosecutorial resources will be conserved through a speedy resolution of the controversy. See Brady v. United States, supra; cf. State v. Marzolf, supra, 79 N.J. [167] at 182-183. [State v. Taylor, 80 N.J. 353, 361 (1979)]
Consequently, if a valid plea bargain is struck we are not involved in a question of constitutional dimension. By electing to proceed to trial which may result in a sentence equal to, but not greater than, his possible plea of guilty, the constitutionally protected area is not involved. State v. Smith, 190 N.J. Super. 21 (App.Div. 1982), certif. den. 96 N.J. 319 (1984) (citing Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979)).
N.J.S.A. 2C:35-12, by providing for post conviction relief, makes defendants' argument more tenuous. Compare State v. Gibson, 68 N.J. 499 (1975) holding it is not error (coercive) to waive an appeal right post plea. The statute does not remove the judiciary's final authority concerning the fairness of the bargain, thus, the ultimate sentencing prerogatives remain with the court, not the prosecutor.[10] This argument of defendants, even considering a more restrictive parole ineligibility requirement, N.J.S.A. 2C:43-6, commonly referred to as the Graves Act, *87 has already survived attack on a constitutional basis in State v. Des Marets, supra.
N.J.S.A. 2C:35-12 as it relates to N.J.S.A. 2C:35-7 is not unconstitutional on due process grounds.

POINT VI.

Are N.J.S.A. 2C:35-7 and -12 unconstitutional on equal protection grounds?
All New Jersey defendants are given the same choice. Those electing to contest their guilt face a certainty of life imprisonment if convicted of first degree murder; but they may be acquitted instead or, in a proper case, may be convicted of a lesser degree of homicide and receive a sentence of less than life. Furthermore, a plea of non vult may itself result in a life sentence. The result, therefore,
may depend upon a particular combination of infinite variables peculiar to each individual trial. It simply cannot be said that a state has invidiously classified.... North Carolina v. Pearce, 395 U.S. [711] at 722, 89 S.Ct. [2072] at 2079 [23 L.Ed.2d 656 (1969)].
It cannot be said that defendants found guilty by a jury are "penalized" for exercising the right to a jury trial any more than defendants who plead guilty are penalized because they give up the chance of acquittal at trial. [Corbitt v. New Jersey, supra, 99 S.Ct. at 500-501]
In the statute under consideration all defendants are considered alike. They are given the same choice. The statute does not violate equal protection considerations as outlined in Corbitt v. New Jersey, supra. United States v. Holland, supra, rejected equal protection claims predicated upon enhanced punishment without regard to the accused's knowledge, and the presumption created by establishing a zone of protection. Holland further rejected an overinclusive argument as related to private dwellings[11] and the resulting consensual *88 adult argument as to permitted acts. It further persuasively held that the act can apply when school is not in session. Additionally an under-inclusive argument that the act did not apply to non-school recreational areas which may be visited by children year round was not accepted as a valid invidious discrimination argument. The conclusion in Holland, equally applicable here, is that equal protection considerations that relate to legislation do not require that each evil be approached with similar magnitude. See also Orleans v. Duke, 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976); United States v. Agilar, 779 F.2d 123, 126 (2 Cir.1985) (section 845a does not raise equal protection problems because there is no showing of discriminatory intent). If this were not so each aspect of criminal law from offense designation to sentencing parameters would be suspect, a result not reached in any known decision.
The statutes under consideration do not violate equal protection considerations.

CONCLUSION.
As to each argument advanced by defendants, as they are factually oriented in this matter, the court finds that they have failed to show the statute in question to be unconstitutional.
NOTES
[1] This sketchy fact pattern has resulted in the State raising a standing argument as to each constitutional challenge. See State v. Cameron, 100 N.J. 586 (1985). A review by the court of defendants' factual situations and the need for resolution of the issues presented, for reasons other than the specific case involved, requires the court to proceed with the motion leaving one issue unresolved because of the standing argument advanced by the State. There is no factual basis to support a challenge to distribution within 1,000 feet of a school bus.
[2] So it also appears as to the language  "while on a school bus." A school bus is defined in N.J.S.A. 39:1-1 as any "motor vehicle operated by, or under contract with, a public or governmental agency, or religious or other charitable organization or corporation, or privately operated for compensation for the transportation of children to or from school for secular or religious education which complies with the regulations of the Department of Education affecting school buses."
[3] Obviously Fourth Amendment rights apply.
[4] 21 U.S.C.A. § 845a, reads in part:

Any person who violates section 841(a)(1) of this title by distributing a controlled substance in or on or within one thousand feet of the real property comprising a public or private elementary or secondary school is (except as provided in subsection (b) of this section) punishable (1) by a term of imprisonment, or fine, or both up to twice that authorized by section 841(b) of this title; and (2) at least twice any special parole term authorized by section 841(b) of this title for a first offense involving the same controlled substance and schedule.
[5] It is significant when evaluating the physical 1,000-foot zone created by N.J.S.A. 2C:35-7 to note that the Legislature via title 18 of the New Jersey Statutes Annotated has established transportation zones for school children which pursuant to N.J.A.C. 6:21-1.3 have been implemented as follows:

Children grades 9-12 transportation required only after a 2 1/2-mile distance residence to school property is exceeded.
Children grades K-8 transportation required only after a 2-mile distance residence to school property is exceeded.
This legislation indicates the Legislature's knowledge of the physical presence of school children relative to school property, and comparing the 1,000-foot zone created by N.J.S.A. 2C:35-7 with the 10,560-foot zone (2 miles) created via the school transportation requirement emphasizes the conclusion that the zone of N.J.S.A. 2C:35-7 is not overbroad.
[6] N.J.S.A. 2C:35-7 provides in part:

Notwithstanding the provisions of N.J.S. 2C:1-8 or any other provisions of law, a conviction arising under this section shall not merge with a conviction for violation of subsection a. of N.J.S. 2C:35-5 (manufacturing, distributing or dispensing) or N.J.S. 2C:35-6 (employing a juvenile in a drug distribution scheme).
[7] N.J.S.A. 2C:35-1.1(a) declares as public policy that this statute recognizes the need "to ensure a uniform, consistent and predictable system for the sentencing of convicted offenders...."
[8] N.J.S.A. 2C:35-12 provides in part:

Whenever an offense defined in this chapter specifies a mandatory sentence of imprisonment which includes a minimum term during which the defendant shall be ineligible for parole, or a mandatory extended term which includes a period of parole ineligibility, the court upon conviction shall impose the mandatory sentence unless the defendant has pleaded guilty pursuant to a negotiated or, in cases resulting in trial, the defendant and the prosecutor have entered into a post-conviction agreement, which provides for a lesser sentence or period of parole ineligibility.
[9] State v. Corbitt, 74 N.J. 379 (1977) held that the United States Supreme Court case of United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968) was limited to its facts  the death penalty. Thereafter, Corbitt pursued his federal remedy.
[10] The coercive argument is further diluted by the fact that, pursuant to N.J.S.A. 2C:43-6, mandatory minimums are also possible depending upon the fact pattern.
[11] N.J.S.A. 2C:35-7 provides an exception regarding private dwellings:

"It is an affirmative defense to prosecution for a violation of this section that the prohibited conduct took place entirely within a private residense, that no person 17 years of age or younger was present in such private residence at any time during the commission of the offense, and that the prohibited conduct did not involve distributing, dispensing or possessing with the intent to distribute or dispense any controlled dangerous substance or controlled substance analog for profit."