238 N.J. Super. 31 (1990)
568 A.2d 1208
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
MARIA ANAYA, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted November 20, 1989.
Decided January 8, 1990.
*33 Before Judges PETRELLA, O'BRIEN and STERN.
Alfred A. Slocum, Public Defender, attorney for appellant (Richard Dunlevy, Assistant Deputy Public Defender, of counsel and on the brief).
Peter N. Perretti, Jr., Attorney General, attorney for respondent (Linda A. Rinaldi, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by STERN, J.A.D.
After denial of her motion to suppress evidence, defendant was convicted of possession of a controlled dangerous substance, heroin, contrary to N.J.S.A. 2C:35-10a(1) and 2C:2-6 (count one); possession with intent to distribute, contrary to N.J.S.A. 2C:35-5a(1) and b(3), and 2C:2-6 (count two); and possession with intent to distribute within 1,000 feet of school property, contrary to N.J.S.A. 2C:35-5a, 2C:35-7 and 2C:2-6 (count three).[1] The trial judge merged count one (possession) with counts two and three, and sentenced defendant on count two to a five-year term of imprisonment, with an 18-month period of parole ineligibility, and on count three to a concurrent five-year term of imprisonment with the statutorily mandated three-year period of parole ineligibility. In addition, the court imposed separate $1,000 Drug Enforcement and Demand Reduction (DEDR) penalties and $50 lab fees on each count, as *34 well as a $30 Violent Crimes Compensation Board penalty. Defendant's driver's license was also revoked for six months.[2]
On this appeal defendant argues:
POINT I THE POLICE DID NOT HAVE PROBABLE CAUSE TO ARREST MARIA ANAYA AND THE EVIDENCE SEIZED BY THE POLICE AS A RESULT OF THEIR UNLAWFUL ARREST OF THE DEFENDANT SHOULD HAVE BEEN SUPPRESSED. (U.S. CONST. AMENDS. IV AND XIV; N.J. CONST. (1947), ART. I, PAR. 7).
POINT II THE NON-MERGER PROVISION OF N.J.S.A. 2C:35-7 VIOLATES BOTH STATE AND FEDERAL PROHIBITIONS AGAINST DOUBLE JEOPARDY. (U.S. CONST. AMEND. V; N.J. CONST. ART. I, PAR. II). (Not Raised Below).
A. New Jersey Law Requires Merger To Prevent Defendant From Being Punished Twice For The Same Offense.
B. Notwithstanding N.J.S.A. 2C:35-7 The Defendant's Convictions for Possession With Intent And Possession With Intent Within 1,000 Feet Of A School Should Be Merged.
POINT III N.J.S.A. 2C:35-7 IS UNCONSTITUTIONALLY VAGUE IN VIOLATION OF THE DEFENDANT'S RIGHT TO DUE PROCESS OF LAW. (U.S. CONST. AMEND. V, XIV; N.J. CONST. (1947) ART. I, PAR. 1.)
POINT IV N.J.S.A. 2C:35-15 WHICH PROVIDES FOR MANDATORY DRUG ENFORCEMENT AND DEMAND REDUCTION (DEDR) PENALTIES TO BE IMPOSED ON ALL PERSONS CONVICTED OF OFFENSES ENUMERATED IN THE COMPREHENSIVE DRUG REFORM ACT OF 1986, N.J.S.A. 2C:35-15 ET SEQ., VIOLATES THE DEFENDANT'S RIGHTS TO EQUAL PROTECTION AND DUE PROCESS AND IS CRUEL AND UNUSUAL PUNISHMENT. (U.S. CONST. AMEND. VIII, XIV; N.J. CONST. (1947), ART. I, PAR. 1, PAR. 12).
POINT V THE TRIAL COURT ERRED IN IMPOSING BASE SENTENCES BEYOND THE PRESUMPTIVE TERM AND IN IMPOSING A MANDATORY MINIMUM SENTENCE OF EIGHTEEN MONTHS FOR THE DEFENDANT'S CONVICTION FOR POSSESSION WITH INTENT.
On July 27, 1987, at or about 10 o'clock in the morning, Detective Walter Sattelberger of the Paterson Police Department, Narcotics Vice Patrol, conducted a "surveillance" for drug activity on Summer Street, between Park and Market *35 Streets.[3] While sitting in an unmarked police vehicle, using a pair of binoculars, Sattelberger focused on 359 Summer Street where a "Spanish male" (co-defendant LaBoy) and a "Spanish female" (defendant) were "just sort of hanging out."
After observing the couple for "five to ten minutes", from an unobstructed vantage point, approximately one hundred feet away, Sattelberger observed a "white male" approach LaBoy and speak to him. The officer then observed the "white male" taking paper money out of his pocket and handing it to LaBoy who took the money and pointed to Anaya who was approximately five to six feet away. The "white male" then walked over to defendant who "reached down into the front of her pants and pulled out a small object and took a piece from that object and handed it to the white male. And then the white male then walked out of the area."
Believing he witnessed a drug transaction, Sattelberger "radioed for the backup unit" to "secure" defendant and LaBoy and for a female officer, since he "had seen the female put something down her pants which [he] suspected was contraband."
When Officer Maureen Daley arrived, Sattelberger told her to "search" defendant because he felt she possessed "contraband." Daley "went into the hallway of 359 Summer Street and then came out with seven bags of suspected heroin", (1T15), from "[i]nside the [defendant's] underwear."
Both defendant and LaBoy were placed under arrest, advised of their rights and taken to headquarters. There, Sattelberger strip searched LaBoy and recovered $165.00. He also field tested the glassine packets of white powder which tested positive for heroin. Two of the seven bags subsequently tested positive in the State Police lab, and it was further determined that the seven glassine bags contained .19 grams of heroin.
*36 At trial it was determined that 359 Summer Street is situated 245 feet in a straight line measurement from Paterson School No. 11.

I.
After observing an individual speak to LaBoy and give him money, seeing LaBoy point to defendant and the male approach her after which she reached down the front of her pants, take a small object and give it to the male, the officer had probable cause to take the action he did.
The constitutional validity of the search in this case, then, must depend upon the constitutional validity of petitioner's arrest. Whether that arrest was constitutionally valid depends in turn upon whether, at the moment the arrest was made, the officers had probable cause to make it  whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing the petitioner had committed or was committing an offense." [State v. Contursi, 44 N.J. 422, 429 [209 A.2d 829] (1965) (quoting Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223 [225], 13 L.Ed.2d 142, 145 (1964)].
We believe that the trial court correctly concluded that Sattelberger's "well-grounded suspicion or belief," based on the totality of the circumstances, that a crime had been committed, was reasonable, State v. Bates, 202 N.J. Super. 416, 423, 495 A.2d 422 (App.Div. 1985); see also State v. DeSimone, 60 N.J. 319, 322, 288 A.2d 849 (1972); State v. Davis, 50 N.J. 16, 23-24, 231 A.2d 793 (1967) cert. den. 389 U.S. 1054, 88 S.Ct. 805, 19 L.Ed.2d 852 (1968), and that the motion to suppress the evidence obtained during a search incident to the arrest was properly denied. State v. McKenna, 228 N.J. Super. 468, 474-475, 550 A.2d 171 (App.Div. 1988).

II.
N.J.S.A. 2C:35-7 provides in pertinent part:
Notwithstanding the provisions of N.J.S. 2C:1-8 or any other provisions of law, a conviction arising under this section shall not merge with a conviction for a violation of subsection a. of N.J.S. 2C:35-5 (manufacturing, distributing or dispensing) or N.J.S. 2C:35-6 (employing a juvenile in a drug distribution scheme). (emphasis added).
*37 In State v. Blow, 237 N.J. Super. 184, 567 A.2d 253 (App.Div. 1989), we recently rejected an argument that, notwithstanding the statute, the convictions of possession with intent to distribute, N.J.S.A. 2C:35-5a(1) and -b(3), and possession with intent to distribute within 1,000 feet of school property, N.J.S.A. 2C:35-5a and 2C:35-7, must merge. We adhere to that position, but add the following.
The New Jersey Double Jeopardy provision, contained in N.J.S.A. Const. (1947) Article 1, ¶ 11, has been construed to be co-extensive with the Double Jeopardy Clause of the Fifth Amendment to the Federal Constitution or is to be interpreted consistent therewith. State v. DeLuca, 108 N.J. 98, 101-102, 527 A.2d 1355 cert. den. sub nom. New Jersey v. DeLuca, 484 U.S. 944, 108 S.Ct. 331, 98 L.Ed.2d 358 (1987); State v. Barnes, 84 N.J. 362, 370, 420 A.2d 303 (1980); State v. Rechtschaffer, 70 N.J. 395, 404, 360 A.2d 362 (1976). Because the language of our state constitution talks about retrial "after acquittal,", as compared with the "broader provision" of the federal constitution, State v. D'Amato, 218 N.J. Super. 595, 602, n. 1, 528 A.2d 928 (App.Div. 1987), certif. den. 110 N.J. 170, 540 A.2d 169 (1988), it can properly be said that our constitution "affords a defendant no greater double jeopardy protection than is granted by the federal constitution." State v. Blow, 237 N.J. Super. at 189, 567 A.2d 253. In this case defendant's constitutional attack on the "non-merger provisions of N.J.S.A. 2C:35-7" is based exclusively on the federal and state double jeopardy clauses, Point II, and it is clear that there is no federal constitutional violation. Accordingly, there can be no state constitutional violation.[4]
*38 In Missouri v. Hunter, 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983) the United States Supreme Court recently held, "[w]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does not more than prevent the sentencing court from prescribing a greater punishment than the legislature intended." 459 U.S. at 366, 103 S.Ct. at 678, 74 L.Ed.2d at 542. In other words, where multiple sentences are imposed in a single proceeding, legislative intent controls. See Garrett v. United States, 471 U.S. 773, 779, 105 S.Ct. 2407, 2411, 85 L.Ed.2d 764, 771 (1985), reh. den. 473 U.S. 927, 106 S.Ct. 20, 87 L.Ed.2d 698 (1985). Stated differently, where the Legislature "intended ... to impose multiple punishment, imposition of such sentences does not violate the constitution." Missouri v. Hunter, supra, 368, 103 S.Ct. at 679, 74 L.Ed.2d at 543, citing Albernaz v. United States, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981).
The legislative intent of the Comprehensive Drug Act of 1986 (C.D.R.A.) regarding N.J.S.A. 2C:35-7 is relatively clear. As recently stated in State v. Morales, 224 N.J. Super. 72, 83, 539 A.2d 769 (Law Div. 1987):
[t]he intent of the Legislature is to provide for stiffer penalties for those who violate N.J.S.A. 2C:35-7. The merger language is intended to ensure that defendants possibly subject to both sections, cannot avoid the mandatory sentencing provision of N.J.S.A. 2C:35-7 by arguing that the N.J.S.A. 2C:35-7 offense merges totally into N.J.S.A. 2C:35-5. It was intended that the convictions for sentencing purposes relating to mandatory minimums were not to be merged. This being the case it becomes clear that the intent of the Legislature was to ensure that for purposes of sentencing the two offenses would not *39 merge to the exclusion of a mandatory minimum and that a violation of N.J.S.A. 2C:35-7, generally, must result in incarceration. Any other reading of the provisions would allow the clear intent of the Legislature to be subverted. With this analysis the legislative goal is realized and the alleged double jeopardy argument is avoided.[5]
Accordingly, the Legislature clearly intended to sanction multiple convictions and punishment upon simultaneous convictions for possession with intent to distribute heroin and for doing it within 1,000 feet of school property, and we uphold that intent. See State v. Blow, supra; compare, State v. Churchdale Leasing, supra.

III.
We summarily reject defendant's vagueness contention. See State v. Ogar, 229 N.J. Super. 459, 471-472, 551 A.2d 1037 (App.Div. 1989). See also State v. Brown, 227 N.J. Super. 429, 547 A.2d 743 (Law Div. 1988); State v. Rodriguez, 225 N.J. Super. 466, 542 A.2d 966 (Law Div. 1988); State v. Morales, supra, 224 N.J. Super. at 78, 539 A.2d 769.

IV.
We have previously rejected challenges to the C.D.R.A.'s penalty provisions based on equal protection, due process and cruel and unusual punishment claims. See State in the Interest of L.M., 229 N.J. Super. 88, 550 A.2d 1252 (App.Div. 1988), *40 certif. den. 114 N.J. 485 (1989). We adhere to that decision.[6]

V.
While we reject defendant's sentencing contention, see State v. O'Donnell, 117 N.J. 210, 564 A.2d 1202 (1989); State v. Ghertler, 114 N.J. 383, 555 A.2d 553 (1989), we note that the same mandatory minimum of three years would have to be served on a four year term as a five year term and that the 18-month parole ineligibility term for possession with intent was made concurrent with the sentence embodying the required three year parole disqualifier. Finally, even though the sentences were concurrent, separate DEDR penalties and lab fees had to be imposed "for each such offense" N.J.S.A. 2C:35-16, 35-20. See State v. Blow, supra, 237 N.J. Super. at 188, 567 A.2d 253.
Affirmed.
NOTES
[1] Co-defendant Pedro LaBoy was also convicted of the same offenses.
[2] The Judgment of Conviction and Order for Commitment notes "[d]efendant does not have a driver's license."
[3] Only Detective Sattelberger testified at the motion to suppress. His testimony at trial was substantially the same.
[4] Recently in State v. Churchdale Leasing, Inc., 115 N.J. 83, 107, 557 A.2d 277 (1989), our Supreme Court noted that the co-extensive interpretation "evolved, however, in the context of multiple prosecutions, not multiple penalties. At some point we may be obligated to reconcile the statement in [Missouri v. Hunter, 459, U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983)] that multiple punishment may be imposed if the Legislature clearly so intends with a conflicting proposition from our own cases. The conflicting proposition is that the Legislature would exceed its authority if in creating two offenses it simply applied different labels to the same offense. See State v. Davis, 68 N.J. 69, 80, 342 A.2d 841 (1975)." See also State v. Newman, 223 N.J. Super. 284, 287-288, 538 A.2d 820 (App.Div. 1988). Given the language of our state constitution, we cannot grant greater double jeopardy protection to a defendant in this context than the broader federal protection. Any such additional protection must flow from a different constitutional safeguard. See State v. Churchdale Leasing, supra 115 N.J. at 107-108, 557 A.2d 277. No other constitutional provision is advanced in this case.
[5] We reject defendant's statutory argument that the non-merger provision of N.J.S.A. 2C:35-7 merely prohibits the merger of that offense into an offense embodied in chapters 35 and 36 so as to avoid the mandatory period of parole ineligibility. Reading the provision to authorize merger of 2C:35-5 and 35-6 offenses into 2C:35-7 would require merger of certain more serious offenses into the third degree crime embodied in the latter section. We find no legislative intent supporting the proposition that N.J.S.A. 2C:35-7 permits the merger of offenses, provided that the mandatory minimum is maintained. Rather, we read the legislative intent, with reference to N.J.S.A. 2C:1-8, as requiring the entry of separate convictions. The use of the words "shall not merge with" (emphasis added) in 2C:35-7 supports this conclusion.
[6] We emphasize that we do not herein deal with the nonpayment of a mandatory penalty. See State in Interest of L.M., 229 N.J. Super. at 96, n. 3, 550 A.2d 1252. See also Black v. Romano, 471 U.S. 606, 614, 105 S.Ct. 2254, 2259, 85 L.Ed.2d 636, 644, reh. den. 473 U.S. 921, 105 S.Ct. 3548, 87 L.Ed.2d 671 (1985); Bearden v. Georgia, 461 U.S. 660, 672-673, 103 S.Ct. 2064, 2072-2073, 76 L.Ed.2d 221, 233 (1983) (revocation of probation and imprisonment justified for willful refusal to pay or upon finding that alternative forms of punishment are not adequate to satisfy the State's legitimate interests in punishment and deterrence); Tate v. Short, 401 U.S. 395, 398, 91 S.Ct. 668, 670, 28 L.Ed.2d 130, 133 (1971) (State cannot "impos[e] a fine as a sentence and then automatically conver[t] it into a jail term solely because the defendant is indigent and cannot forthwith pay the fine in full"); Williams v. Illinois, 399 U.S. 235, 244-245, 90 S.Ct. 2018, 2023-2024, 26 L.Ed.2d 586, 595 (1970) (noting general ability to impose alternatives to incarceration such as installment payments and permitting defendant to work off the fine); State in Interest of D.G.W., 70 N.J. 488, 505, n. 4, 361 A.2d 513 (1976) (requiring the setting of terms of payment as condition of probation according to ability to pay and stating "in case of later default, in no event may the juvenile offender be institutionalized or probation be terminated because of inability to pay"); State v. DeBonis, 58 N.J. 182, 199-200, 276 A.2d 137 (1971) (indigent must be afforded opportunity to pay the fine in reasonable installments, but incarceration permitted "to achieve the needed penological objective" if none of the alternatives are warranted).