STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. LINDA DELUCA, DEFENDANT-RESPONDENT.

Argued January 6, 1987—Decided July 21, 1987.

*Larry R. Etzweiler*, Deputy Attorney General, argued the cause for appellant (*W. Cary Edwards*, Attorney General of New Jersey, attorney).

*Christopher J. LaMonica* argued the cause for respondent (*Wilbert & Montenegro,* attorneys).

The opinion of the Court was delivered by

POLLOCK, J.

The primary question on this appeal is whether an acquittal of death by auto, *N.J.S.A.* 2C:11–5, should bar a subsequent prosecution for driving while under the influence (the DWI charge), *N.J.S.A.* 39:4–50.

After a jury trial in the Law Division, defendant was acquitted of causing death by auto. Thereafter she moved in the Dover Township Municipal Court to dismiss the DWI charge, but the court denied the motion. On appeal, however, the Law Division granted the motion to dismiss. The Appellate Division affirmed, 208 *N.J.Super.* 422 (1986), stating that the prosecution had conceded that its only evidence of recklessness to support the death-by-auto charge was defendant's alleged intoxication. *Id.* at 426. Before us, the Attorney General challenges that statement and contends that various facts, including the weather, road, and lighting conditions, were such that the happening of the accident raises an inference of recklessness apart from evidence of defendant's intoxication. We granted certification, 104 *N.J.* 468 (1986), and now reverse and remand to the Law Division.

I

At approximately 1:00 a.m. on January 29, 1984, a car operated by defendant, Linda DeLuca, on Clifton Avenue, Dover Township, Ocean County, struck and killed a pedestrian. DeLuca had spent the evening at the home of Sharon Peet, where she had consumed alcoholic beverages. Defendant offered to drive Miss Peet to a store to purchase cigarettes, and on the return trip, defendant's vehicle struck the pedestrian. The weather was clear, and the road was dry and well lighted. Defendant's vehicle left no skid marks, and no other vehicle

was involved in the accident. The breathalyzer test revealed defendant's blood alcohol content as .21%.

Initially, defendant was charged in the Dover Township Municipal Court with DWI and reckless driving. Thereafter she was indicted by the Ocean County Grand Jury for causing death by auto. After her acquittal following a jury trial on that indictment, defendant moved in the Municipal Court to dismiss the DWI and reckless driving charges. The State agreed to dismiss the reckless driving charge because of double jeopardy; the Municipal Court, however, denied defendant's motion to dismiss the DWI charge.

Relying on *State v. Dively*, 92 *N.J.* 573 (1983), however, the Law Division reversed. The court found that the DWI prosecution was barred by double jeopardy because the State intended to rely on the same evidence used to prove recklessness in the death-by-auto prosecution, namely, intoxication.

In affirming, the Appellate Division found that the charges of death by auto and DWI each required proof of elements not required by the other. The court, nonetheless, agreed with the Law Division that because the State would rely on the same proofs in both prosecutions, the DWI prosecution was barred.

In light of the State's representation that evidence other than intoxication was adduced in the trial of the death-by-auto indictment, we are constrained to remand the matter to the Law Division to determine whether such proof was adduced or whether intoxication was offered as the sole proof of defendant's recklessness in that prosecution.

## II

Our analysis begins with the double jeopardy clause of the fifth amendment of the United States Constitution, which provides: "Nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb * * *." Through the due process clause of the fourteenth amendment, this constitutional guarantee applies against the states. *Illinois v. Vitale*,

447 *U.S.* 410, 415, 100 *S.Ct.* 2260, 2264, 65 *L.Ed.*2d 228, 235 (1980); *Benton v. Maryland,* 395 *U.S.* 784, 794, 89 *S.Ct.* 2056, 2062, 23 *L.Ed.*2d 707, 716 (1969). The parallel provision in the State Constitution is article I, paragraph 11, which provides: "No person shall, after acquittal, be tried for the same offense." We have consistently interpreted the state constitutional double jeopardy protection as co-extensive with the guarantee of the federal Constitution. *State v. Dively, supra,* 92 *N.J.* at 573, 578; *State v. Barnes,* 84 *N.J.* 362, 370 (1980); *State v. Rechtschaffer,* 70 *N.J.* 395, 404 (1976); *State v. Wolf,* 46 *N.J.* 301, 303 (1966).

The United States Supreme Court has stated that the double jeopardy clause "protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *North Carolina v. Pearce,* 395 *U.S.* 711, 717, 89 *S.Ct.* 2072, 2076, 23 *L.Ed.*2d 656, 664–65 (1969) (footnotes omitted). The present case involves the protection accorded by the clause against a second prosecution for the same offense after acquittal. Nonetheless, underlying all the protections provided by the clause is the principle

> that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty. [*Green v. United States,* 355 *U.S.* 184, 187–88, 78 *S.Ct.* 221, 223–24, 2 *L.Ed.*2d 199, 204 (1957).]

In determining whether to apply the double jeopardy bar, the primary concern is whether the second prosecution is for the "same offense" involved in the first. *See* Thomas, *The Prohibition of Successive Prosecutions for the Same Offense: In Search of a Definition,* 71 *Iowa L.Rev.* 323 (1986) (*Prohibition of Successive Prosecutions* ). The United States Supreme Court outlined a frequently applied federal test in *Blockburger v. United States,* 284 *U.S.* 299, 52 *S.Ct.* 180, 76 *L.Ed.* 306

(1982). *See also Prohibition of Successive Prosecutions, supra,* 71 *Iowa L.Rev.* at 330–35 (discussing potential tests for defining "same offense"). There, the defendant was charged with several offenses stemming from the same course of conduct, all of which were prosecuted together. The Court stated that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not." *Id.* at 304, 52 *S.Ct.* at 182, 76 *L.Ed.* at 309; *accord State v. Dively, supra,* 92 *N.J.* at 579.

In *Brown v. Ohio,* 432 *U.S.* 161, 97 *S.Ct.* 2221, 53 *L.Ed.*2d 187 (1977), the High Court extended the *Blockburger* test to apply to successive prosecutions. The defendant in *Brown* had pleaded guilty to a charge of joyriding, and was later indicted for auto theft, which was defined as "joyriding with the intent permanently to deprive the owner of possession." *Id.* at 167, 97 *S.Ct.* at 2226, 53 *L.Ed.*2d at 195. Applying the *Blockburger* test, the Court held that because the offense of joyriding required no proof beyond that necessary to convict the defendant of auto theft, the prosecution for theft was barred by the prior joyriding conviction. The Court iterated that the test depended on an analysis of the statutory elements of the offense, rather than the proofs actually offered at trial. *Id.* at 166, 97 *S.Ct.* at 2225, 53 *L.Ed.*2d at 194; *see also Iannelli v. United States,* 420 *U.S.* 770, 785 n. 17, 95 *S.Ct.* 1284, 1293 n. 17, 43 *L.Ed.*2d 616, 627 n. 17 (1975) (*Blockburger* test is satisfied if each offense requires proof of fact the other does not, notwithstanding substantial overlap in proof offered).

The apparent clarity of the *Blockburger* test has become clouded, however, by the Court's interpretation of double jeopardy in *Illinois v. Vitale,* 447 *U.S.* 410, 100 *S.Ct.* 2260, 65 *L.Ed.* 2d 228 (1980). In *Vitale,* the defendant was charged with involuntary manslaughter. He had previously been convicted of failure to slow his car in order to avoid an accident, a charge arising from the same incident as the manslaughter charge.

Thus, the question presented to the Court was whether failure to slow was the "same offense" for double jeopardy purposes as involuntary manslaughter. The Court determined that the record did not contain sufficient information under Illinois law to answer that question under the *Blockburger* test. *Id.* at 419, 100 *S.Ct.* at 2266, 65 *L.Ed.*2d at 237. The Court continued,

if manslaughter by automobile does not always entail proof of a failure to slow, then the two offenses are not the "same" under the *Blockburger* test. The mere possibility that the State will seek to rely on all of the ingredients necessarily included in the traffic offense to establish an element of its manslaughter case would not be sufficient to bar the latter prosecution. [*Id.*, 447 *U.S.* at 419, 100 *S.Ct.* at 2266, 65 *L.Ed.*2d at 237.]

Therefore, the Court remanded for additional information regarding the relationship between the two charges and the determination of whether a careless failure to slow is always a necessary element of manslaughter by automobile.

The Court, however, went on to examine another of its double-jeopardy opinions, *Harris v. Oklahoma*, 433 *U.S.* 682, 97 *S.Ct.* 2912, 53 *L.Ed.*2d 1054 (1977). In *Harris*, the Court held that a felony murder conviction barred a subsequent robbery prosecution when robbery was the felony underlying the first prosecution. Although the traditional *Blockburger* test was not satisfied because each offense required proof of an element not required by the other, the Court concluded that it had "treated a killing in the course of a robbery as itself a separate statutory offense, and the robbery as a species of lesser-included offense." *Vitale, supra,* 447 *U.S.* at 420, 100 *S.Ct.* at 2267, 65 *L.Ed.*2d at 238.

The Court then indicated that more was required than a mechanical analysis of the elements of the two offenses

if in the pending manslaughter prosecution Illinois relies on and proves a failure to slow to avoid an accident as the reckless act necessary to prove manslaughter, Vitale would have a substantial claim of double jeopardy under the Fifth and Fourteenth Amendments of the United States Constitution. [*Id.* at 421, 100 *S.Ct.* at 2267, 65 *L.Ed.*2d at 238.]

This seemingly inconsistent language in *Vitale* has created some confusion among state courts, federal courts, and some members of the United States Supreme Court. *See, e.g., Thig-*

*pen v. Roberts,* 468 *U.S.* 27, 104 *S.Ct.* 2916, 82 *L.Ed.*2d 23 (1984) (Rehnquist, J., dissenting); *State v. Zegart,* 452 *U.S.* 948, 101 *S.Ct.* 3094, 69 *L.Ed.*2d 961 (1981) (Burger, C.J., dissenting from denial of *certiorari*); *United States v. Kimberlin,* 781 *F.* 2d 1247, 1256 (7th Cir.1985), *cert. denied,* —— U.S. ——, 107 *S.Ct.* 419, 93 *L.Ed.*2d 370 (1986); *People v. Reed,* 92 *Ill.App.*3d 1115, 1119, 48 *Ill.Dec.* 421, 425, 416 *N.E.*2d 694, 698 (1981).

Several courts, concluding that *Vitale* did not alter the original *Blockburger* test, have continued to compare the statutory elements. For these courts, the test continues to be whether each offense requires proof of an element not required by the other. *Thigpen v. Roberts, supra,* 468 *U.S.* 27, 104 *S.Ct.* 2916, 82 *L.Ed.*2d 23 (Rehnquist, J., dissenting); *State v. Zegart, supra,* 452 *U.S.* 948, 101 *S.Ct.* 3094, 69 *L.Ed.*2d 961 (Burger, C.J., dissenting from denial of *certiorari*); *United States v. Grimes,* 573 *F.Supp.* 1202 (S.D.Ohio 1983); *State v. Timms,* —— R.I. ——, 505 *A.*2d 1132 (1986). Under this test, it is unnecessary to focus on the proof actually offered at trial.

In *State v. Dively, supra,* 92 *N.J.* 573, however, this Court recently provided a different interpretation of the effect of *Vitale* on the *Blockburger* test. In *Dively,* the defendant was driving his car in an intoxicated state and caused an accident that resulted in a death. Among the offenses with which he was charged were drunk driving, reckless driving, driving without a license, and failure to keep right. An additional summons was later issued charging driving after license revocation. The reckless driving and failure-to-keep-to-the-right charges were merged into the DWI charge, and the defendant pleaded guilty to DWI, driving without a license, and driving while on the revoked list. The Grand Jury later issued an indictment against the defendant for death by auto. Although he pleaded guilty, the defendant reserved his right to challenge the death-by-auto conviction because of double jeopardy.

This Court considered the two offenses of reckless driving and death by auto to see if there was a double jeopardy bar to

the death-by-auto prosecution. Although it was clear in *Dively* that the *Blockburger* elemental test had been satisfied, we concluded that the United States Supreme Court had created a two-pronged test to determine when double jeopardy should apply. *State v. Dively, supra,* 92 *N.J.* 573; *see also* Note, *The Impact of Expanded Rules for Determining What Constitutes the "Same Offense" for Double Jeopardy Purposes: Illinois v. Vitale,* 1980 *B.Y.U. L.Rev.* 948. We stated that "[i]t is only when both prongs are met that double jeopardy applies." *Id.* at 581; *see also State v. Calvacca,* 199 *N.J.Super.* 434 (App.Div.1985) (elemental analysis unnecessary because evidentiary prong not satisfied).

The first prong of the test, as recognized in *Dively,* consists of the traditional *Blockburger* analysis, which focuses on the elements of the offenses. The inquiry is whether each offense requires proof of an additional fact not necessary for the other offense. If so, the two offenses are not the same for double jeopardy purposes, and the second prosecution is not barred.

In the present case, the Appellate Division first concluded that the elements of death by auto were different from those of DWI. Notwithstanding *Dively's* requirement of satisfying both prongs of the double jeopardy test, the court proceeded to consider the effect of the proof of intoxication in the death-by-auto case on the subsequent DWI charge. The Appellate Division relied on the statement in *Vitale* that the defendant "would have a substantial claim of double jeopardy" if the same evidence used to prove the first offense is necessary to prove the second offense. *State v. DeLuca, supra,* 208 *N.J.Super.* at 434.

Other courts have also read this language as creating an alternative test, independent of the *Blockburger* analysis. *See State v. Grampus,* 288 *S.C.* 395, 343 *S.E.*2d 26 (1986); *see also People v. Jackson,* 144 *Ill.App.*3d 131, 98 *Ill.Dec.* 449, 494 *N.E.*2d 571 (1986) (looking at factual basis to bar reckless homicide prosecution following guilty plea to DWI); Thomas, *RICO*

*Prosecutions and the Double Jeopardy/Multiple Punishment Problem*, 78 *N.W.U. L.Rev.* 1359, 1387 (1984) (*RICO Prosecutions and Double Jeopardy* ) (if no double jeopardy bar under *Blockburger*, look to second test). In his dissent in *Thigpen, supra*, 468 *U.S.* at 33, 104 *S.Ct.* at 2920, 82 *L.Ed.*2d at 30, Justice Rehnquist disagreed with this interpretation, insisting that the Court never intended to create a new test based on the evidence actually adduced in the first prosecution. *See also State v. Zegart, supra*, 452 *U.S.* 948, 101 *S.Ct.* 3094, 69 *L.Ed.*2d 961 (Burger, C.J., dissenting from\denial of *certiorari* ) (court should grant *certiorari* to clarify that review must center on statutory elements, not facts or proof). The majority of the Supreme Court, however, refused to reach this issue in *Thigpen*, and affirmed the lower court's decision on due process grounds. 468 *U.S.* 27, 104 *S.Ct.* 2916, 82 *L.Ed.*2d 23. We are persuaded that the more accurate reading of *Vitale* is that it enhanced the protection afforded a defendant facing a second prosecution on the same facts. *See, e.g., Prohibition of Successive Prosecutions, supra*, 71 *Iowa L.Rev.* at 351; *RICO Prosecutions and Double Jeopardy, supra*, 78 *N.W.U. L.Rev.* at 1389. Thus, consistent with the holding of the Appellate Division, we conclude that *Vitale* intended the second "prong" or test as an alternative to the first. Apart from the erroneous conclusion that the proof prong must be satisfied in addition to the elemental prong of double jeopardy, *Dively* accurately describes that second prong.

█  Relying on the statement in *Vitale, supra*, 447 *U.S.* at 417, 100 *S.Ct.* at 2265, 65 *L.Ed.*2d at 236, that proof of the greater offense must necessarily establish the lesser offense, the *Dively* Court determined that the question in the second prong was whether the evidence actually used to establish guilt in the first prosecution is identical to that that will be used in the second prosecution. *Dively, supra*, 92 *N.J.* at 581. If the same evidence used in the first prosecution is the sole evidence in the second, the prosecution of the second offense is barred. *See State v. McGaughy*, 505 *So.*2d 399 (Ala.Crim.App.1987)

(substantial claim of double jeopardy if proof of lesser offense constitutes sole proof of element of greater offense); *State v. Grampus, supra,* 343 *S.E.*2d 26 (if traffic violation represents sole basis for element of felony DWI prosecution, double jeopardy bar applies); *see also Sekou v. Blackburn,* 796 *F.*2d 108, 109 (5th Cir.1986) (felony murder not barred by armed robbery conviction as long as armed robbery need not be sole underlying felony for felony murder). *But see People v. Dickens,* 144 *Mich.App.* 49, 373 *N.W.*2d 241 (1985) (DWI charge barred because it was essential to proving negligence for homicide even though excessive speed also proven on question of negligence).

## III

Death by auto requires proof of a death, a fact not required for the proof of drunk driving, *N.J.S.A.* 39:4–50. Drunk driving, on the other hand, requires proof of defendant's intoxication (or blood alcohol concentration), a fact not required for the proof of death by auto, *N.J.S.A.* 2C:11–5. Thus, under the traditional *Blockburger* analysis, drunk driving and death by auto are not the "same" offense, and a conviction or acquittal for one should not bar a subsequent prosecution for another. *See State v. Calvacca, supra,* 199 *N.J.Super.* 434.

Because the *Blockburger* elemental test provides no bar in the present case, we must consider whether the second prosecution is barred because it will involve the same evidence as the first. The death-by-auto statute, *N.J.S.A.* 2C:11:5a, provides that "criminal homicide constitutes death by auto when it is caused by driving recklessly." Defendant contends, and the Appellate Division accepted, 208 *N.J.Super.* at 426, that the State's case depended solely on evidence of intoxication to prove recklessness. So viewed, the State in the second prosecution would be relying on the same proofs that constituted the sole evidence on the question of recklessness in the first. The prosecution for DWI, as the Appellate Division found, would,

therefore, be barred. Before us, however, the State contends that evidence other than intoxication was offered to prove recklessness in the death-by-auto action. In this regard, the State points to the weather, road, and lighting conditions, as well as the absence of any skid marks, to create an inference of recklessness.

The parties have not provided us with the record of the death-by-auto trial, thereby precluding our independent examination of the proofs in that proceeding. As a result, it is necessary to remand the matter to the trial court to review the proofs of recklessness in the death-by-auto proceeding. If the State relied solely on intoxication as evidence of recklessness in the death-by-auto case, double jeopardy would bar the DWI prosecution. If, however, other evidence was adduced, the DWI prosecution will not be barred.

We find the same result follows under *Pandelli v. United States,* 635 *F.*2d 533 (6th Cir.1980), which the State urges us to follow. In *Pandelli,* the Sixth Circuit found that *Vitale* had modified the *Blockburger* elemental test to make less abstract the comparison of the elements of the two offenses. *Id.* at 536; *see also Davis v. Herring,* 800 *F.*2d 513, 519 (5th Cir.1986) (when complex statute is charged, *Blockburger* test may be modified to require court to examine only relevant portion of statute); *Carter v. State,* —— *Ind.App.* ——, 424 *N.E.*2d 1047, 1050–51 (1981) (Staton, J., concurring) (court evolving from abstract analysis to *de facto* examination of components of statutory elements). The focus in *Pandelli* was on offenses with statutory elements that could be defined in the alternative or were capable of multiple possible meanings. The court explained its method of analysis not only by reference to *Vitale* but also to *Whalen v. United States,* 445 *U.S.* 684, 100 *S.Ct.* 1432, 63 *L.Ed.*2d 715 (1980), which involved cumulative punishments for rape and felony murder that arose out of the same episode. The felony murder statute involved was so written that any homicide perpetrated during the course of six specific

felonies, one of which was rape, could support a conviction for felony murder. Under the traditional *Blockburger* analysis, the rape statute and the felony murder statute created distinct offenses, because each statute required proof of an element that the other did not. In *Whalen*, however, the Court reasoned that it should construct from the alternative elements within the statute the particular formulation applicable to the case at hand, ridding the statute of alternatives that do not apply. Because rape was the only applicable felony, the Court found that rape was a lesser offense included in felony murder because all of the elements of rape were included within the elements required in a felony murder case based on rape. The *Pandelli* court adopted that method of analysis and concluded that when reviewing double jeopardy claims, before applying the *Blockburger* test, courts "must narrow the statute to be analyzed until it includes only the alternatives relevant to the case at hand." *Id.* at 538.

Similarly, "recklessness," an element of death by auto, is capable of many possible meanings including, as was the case in *Vitale*, failure to slow. In such a case, comparing the elements of the statutory offenses in their abstract form is virtually meaningless: a death-by-auto statute that requires recklessness will never specifically include failure to slow as a lesser included offense. The first step, according to the *Pandelli* court, is to redefine the elements of the offense in terms of the specific alternative or meaning applied by the prosecution. *Id.* at 538. A court considering double jeopardy would narrow the elements of the offense to include only the alternatives or meanings relevant to the particular case. After that narrowing process has been completed, the statutory elements, as narrowed, can be compared in accordance with *Blockburger. Id.; see* also *Pryor v. Rose,* 724 *F.*2d 525, 529 (6th Cir.1984) (court must select relevant alternative from multiple-purpose criminal statute).

Traffic offenses, such as DWI, normally are prosecuted in the municipal court. *N.J.S.A.* 2A:8–21a. Municipal

courts, however, have no jurisdiction to try death-by-auto cases. *N.J.S.A.* 2A:8–21g. As an indictable offense, death by auto is tried in the Superior Court. *N.J.S.A.* 2A:3–4; *R.* 3:1–5a. The Superior Court may assert jurisdiction over non-indictable offenses when they are lesser included offenses of the indictables. *State v. Saulnier*, 63 *N.J.* 199 (1973). The requirement that DWI be tried in the municipal court and death by auto in the Superior Court presents a jurisdictional dilemma. We undertook to solve that dilemma in *Dively* by "issuing a directive to all municipal court judges to withhold actions on drunk driving incidents involving personal injuries until clearance to proceed has been obtained from the county prosecutor. Where death occurs, we expect a drunk driver in the future to be charged with and tried for the greater offense of death by auto." 92 *N.J.* at 590. Various procedures have been suggested to solve the problem of the disposition of the death-by-auto charge, which may be tried before a jury and the DWI charge, as to which there is no right to trial by jury. By virtue of an annual cross-assignment order, Superior Court judges may hear municipal court cases in the cases in which they sit. Hence, we believe that the appropriate solution is for both charges to proceed simultaneously. The judge will preside as a Superior Court judge over the trial of the death-by-auto action. The same judge will sit as a municipal court judge with respect to the DWI charge and base his or her decision on the proofs adduced in the course of the death-by-auto charge. If in the death-by-auto case the sole evidence of recklessness is defendant's intoxication, the jury's determination of that issue will preclude a conviction for the DWI charge.

The judgment of the Appellate Division is reversed, and the matter is remanded to the Law Division.

*For reversal and remandment*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*For affirmance*—None.