222 N.J. Super. 122 (1987)
536 A.2d 282
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
MICHAEL ROACH, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 10, 1987.
Decided December 28, 1987.
*124 Before Judges MICHELS, SHEBELL and GAYNOR.
Jon Steiger, designated attorney, argued the cause for appellant (Alfred A. Slocum, Public Defender, attorney for appellant; Jon Steiger, on the brief).
Robert A. Honecker, Assistant Prosecutor, argued the cause for respondent (John A. Kaye, Monmouth County Prosecutor, attorney for respondent; Mark P. Stalford, Assistant Prosecutor, of counsel and on the brief).
The opinion of the court was delivered by GAYNOR, J.A.D.
An indictment returned by a Monmouth County Grand Jury charged defendant with two counts of aggravated sexual assault (N.J.S.A. 2C:14-2.a), sexual assault (N.J.S.A. 2C:14-2.b), aggravated criminal sexual contact (N.J.S.A. 2C:14-2.a), endangering the welfare of a child (N.J.S.A. 2C:24-4.a) and two counts of distributing a controlled dangerous substance (N.J.S.A. 24:21-19.a(1) and 24:21-26.b). One distribution count was dismissed on the State's pretrial motion. A mistrial was declared by the trial judge upon being informed by the jury, after two hours of deliberation, that they were "hopelessly deadlocked." Defendant's subsequent motion to dismiss the indictment *125 on grounds of double jeopardy was denied and the case proceeded to a second trial. Following this second trial, defendant was convicted of distribution of a controlled dangerous substance but the jury was deadlocked as to the remaining counts alleging unlawful sexual conduct. A mistrial as to those counts was declared.[1] Defendant was thereupon sentenced to a seven-year prison term and ordered to pay a $25 VCCB penalty.
On this appeal, defendant advances the following arguments in support of his contentions that his conviction should be reversed and the distribution count of the indictment should be dismissed or, alternatively, his sentence should be modified or the matter remanded for resentencing with directions to afford defendant the presumption of non-incarceration:
I. THE DEFENDANT'S MOTION FOR A DISMISSAL OF COUNT SIX OF THE INDICTMENT AT THE CONCLUSION OF THE STATE'S PROOF WAS ERRONEOUSLY DENIED.
II. THE DEFENDANT'S FIRST TRIAL WAS IMPROPERLY TERMINATED AND THE SECOND TRIAL WAS THEREFORE A DEPRIVATION OF THE DEFENDANT'S FIFTH AMENDMENT RIGHT NOT TO BE SUBJECTED TO MULTIPLE PROSECUTIONS.
III. THE SENTENCE IMPOSED BELOW WAS MANIFESTLY UNFAIR: IT WAS AN ABUSE OF DISCRETION TO IMPOSE A CUSTODIAL TERM.
The State's evidence in the first trial pertaining to the alleged unlawful distribution of a controlled dangerous substance, disclosed that defendant, while a counsellor at the Monmouth County JINS[2] Shelter, had participated in the use of marijuana and cocaine with one J.B., a juvenile resident of the shelter. J.B. testified that he and defendant had smoked a marijuana cigarette together by passing it back and forth between them, but that he, J.B., had supplied the marijuana. In a written statement given to the prosecutor's investigator, *126 J.B. had stated that defendant got him high a couple of times on marijuana and that defendant uses cocaine but had never supplied any to him. The investigator also testified that during questioning at the prosecutor's office defendant admitted to having brought marijuana into the shelter and sharing it with J.B. Defendant's motion at the conclusion of the State's case for a dismissal of this charge was denied.
In denying defendant's motion, the trial judge concluded that the undisputed evidence as to the passing back and forth of a marijuana cigarette between defendant and J.B. could constitute a transfer within the meaning of the statute prohibiting the distribution of marijuana. He reasoned:
Let's take this in two steps. First of all, let it be said that distribute as that statute  as that word is defined means, to deliver a controlled dangerous substance; and deliver has a definition which means, an actual or attempted transfer from one person to another of a controlled dangerous substance. And there is no question in this Court's mind that there need not be a sale. There need not be a money transaction. There may not be a giving over and forever surrendering to have a delivery under that statute. Delivery means attempted to transfer or the actual transfer from one person to another of C.D.S. It certainly in this Court's opinion covers the situation where a marijuana cigarette is passed from person A to person B to person D for instance. D is the defendant and then back to A, D the defendant transfers it back to A that is a delivery of a controlled dangerous substance and it matters not in this Court's opinion that that item was in the process of being smoked all around in a peace pipe type of setting. That is a transfer and that is a delivery. As I understand the definition that constitutes a distribution of controlled dangerous substance.
Defendant argues that this is a strained and contrived interpretation of the concept of distribution as used in the statute. Assertedly, it was not within the contemplation of the Legislature "to permit the conviction of individuals for the distribution of marijuana when the circumstances are such that individuals merely passed a small quantity of marijuana back and forth between themselves in the course of ingesting it." We disagree.
The Legislature decreed that "it shall be unlawful for any person knowingly or intentionally [t]o ... distribute ... a *127 controlled dangerous substance," N.J.S.A. 24:21-19.a(1), and permited the imposition of an enhanced term of imprisonment upon "[a]ny person who is at least 18 years of age who violates § 19a(1) by distributing any other controlled dangerous substance ... to a person 17 years of age or younger who is at least three years his junior...." N.J.S.A. 24:21-26.b. The term "[d]istribute" is defined in N.J.S.A. 24:21-2 as meaning "to deliver other than by administering or dispensing a controlled dangerous substance," and "`[d]istributor' means a person who distributes." Delivery is "the actual, constructive, or attempted transfer from one person to another of a controlled dangerous substance, whether or not there is an agency relationship." Id. We discern nothing in this statutory language to suggest that the Legislature intended that distribution of a controlled dangerous substance not include the transfer of marijuana as two individuals passed a "joint" back and forth in sharing the smoking of it. "Distribute" under the Act clearly and simply means delivery, that is, the "transfer from one person to another of a controlled dangerous substance...." N.J.S.A. 24:21-2. State v. Heitzman, 209 N.J. Super. 617, 621 (App.Div. 1986), aff'd, 107 N.J. 603 (1987). As the clear and unambiguous language of the statute admits of no other interpretation further exploration to discern legislative intent is unnecessary. State v. Valentin, 208 N.J. Super. 536, 539 (App. Div. 1986), aff'd, 105 N.J. 14 (1987).
As we observed in State v. Sainz, 210 N.J. Super. 17, 25 (App.Div. 1986), aff'd, 107 N.J. 283 (1987), distribution under the Act is present "whether the intent is merely to share cocaine casually with a friend or to control a widespread network of illicit distribution and sale." Ibid. In Heitzman, we also noted that distribution does not require a commercial sale but can take place in the sharing of marijuana with social guests. 209 N.J. Super. at 620-621. We perceive no valid distinction between the passing of an unlighted or lighted marijuana cigarette *128 from one person to another as would permit the delivery of the unlighted material to be considered distribution of a controlled dangerous substance but not the transfer of a lighted "joint." Moreover, here, even if the substance were furnished by J.B., defendant's position at the JINS Shelter required that upon obtaining possession of the marijuana cigarette it be confiscated. By passing it back to the juvenile and thus permitting further unlawful use of the substance, defendant knowingly and intentionally transferred the marijuana to J.B. Clearly, defendant thereby engaged in distribution of the marijuana within the intendment of the statute.
Although evidence of such conduct alone was sufficient to warrant the denial of defendant's motion for acquittal, the additional testimony pertaining to defendant's oral admission and the written statement originally given by J.B. to the investigator provided further support for the trial judge's conclusion that a jury issue had been presented. Viewing the State's evidence in its entirety and giving the State the benefit of all its favorable testimony as well as all of the favorable inferences reasonably to be drawn therefrom, it was properly determined that a reasonable jury could find defendant guilty of distribution of a controlled dangerous substance to J.B. beyond a reasonable doubt. State v. Reyes, 50 N.J. 454, 458-459 (1967).
We also discern no error in the denial of defendant's motion to dismiss the indictment because of the claimed violation of his Fifth Amendment right arising by reason of the retrial. As the first trial assertedly had been improperly terminated, the second trial thus would unlawfully subject defendant to multiple prosecutions for the same offenses. Our review of the record satisfies us that defendant's first trial was not improperly terminated. The mistrial due to the deadlocked jury was declared by the trial judge only after being repeatedly *129 informed by the jury that it was unable to reach a unanimous verdict. After having deliberated some two and one-half hours, the jury sent a note to the judge stating it was deadlocked. With consent of counsel, the trial judge responded by asking the jury if it would be helpful to continue deliberations on the following day or whether it was hopelessly deadlocked. By note, the jury again indicated it was hopelessly deadlocked. The jury was then brought in and the judge inquired of the foreman whether the note stating that it was hopelessly deadlocked was a consensus. The foreman replied that it was. The mistrial was then declared.
The Code permits the termination of a trial because of the "failure of the jury to agree upon a verdict after a reasonable time for deliberation has been allowed." N.J.S.A. 2C:1-9.d(2). The facts of each case are determinative as to whether the time allowed for deliberation is reasonable, United States ex rel. Russo v. Superior Court of N.J., 483 F.2d 7, 13 (3 Cir.1973), cert. den., 414 U.S. 1023, 94 S.Ct. 447, 38 L.Ed.2d 315 (1973), and the determination as to what factual situations merit a mistrial and allow a defendant to be reprosecuted is a matter within the broad discretionary authority of the trial judge. Id.; State v. Reddick, 76 N.J. Super. 347, 351 (App.Div. 1962). A trial judge's decision in this regard will be upset only for an abuse of that discretion. State v. Thomas, 76 N.J. 344, 362 (1978).
Defendant argues, although without any factual foundation, that the approximate two and one-half hours of jury consideration could hardly be considered a reasonable time for its deliberations. This argument lacks persuasiveness in view of the opportunity afforded the jury to continue deliberations and its repeated response of a hopeless deadlock. Under such circumstances, the trial judge cannot be faulted for concluding that a mistrial was appropriate due to the jury's inability to agree *130 upon a verdict. See Reddick, 76 N.J. Super. 347 (App.Div. 1962). Moreover, defense counsel made no objection at the time to the trial court's action. Defendant's reliance upon United States ex rel. Russo and State v. Esposito, 148 N.J. Super. 102 (App. Div. 1977), certif. den., 74 N.J. 260 (1977), is misplaced as the situations presented in those cases render them factually inapposit.
Finally, we find no merit in defendant's contention that the trial court abused its discretion in imposing a custodial sentence. Defendant's assertion that the presumption against incarceration afforded to first offenders by N.J.S.A. 2C:44-1.e was applicable lacks substance. As his conviction subjected defendant to an enhanced maximum sentence of ten years  a term in consort with a second degree offense  it suggested "at least presumptively, that the nature of that Title 24 offense is incompatible with a noncustodial sentence." State v. Sobel, 183 N.J. Super. 473, 480 (App.Div. 1982). However, while the trial judge followed the sentencing guidelines, we are constrained to conclude that the application of those guidelines to the circumstances of this case renders the imposition of a seven-year prison term so unreasonable as to be shocking to the judicial conscience. State v. Roth, 95 N.J. 334, 364-366 (1984). In our view, a custodial sentence of four years is sufficiently severe to reflect the gravity of the offense committed by defendant and to deter him and others from participating in such antisocial activity. In the exercise of our original jurisdiction, we therefore modify defendant's sentence by committing him to the custody of the Commissioner of Corrections for a term of four years.
We affirm the conviction of defendant but modify his sentence as herein provided. The matter is remanded to the Superior Court, Law Division, Monmouth County, for the necessary correction of the judgment of conviction.
NOTES
[1] Defendant's motion to dismiss the remaining counts of the indictment was denied and the case was placed on the inactive trial list pending this appeal.
[2] Juveniles In Need of Supervision.