234 N.J. Super. 545 (1989)
561 A.2d 280
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOHN H. DEVLIN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued April 18, 1989.
Reargued May 31, 1989.
Decided June 30, 1989.
*547 Before Judges MICHELS, MUIR, Jr., and KEEFE.
Brian T. Kennedy argued the cause for appellant (Kennedy and Daniel, attorneys; Brian T. Kennedy, of counsel and on the brief).
Larry R. Etzweiler, Deputy Attorney General, argued the cause for respondent (Peter N. Perretti, Jr., Attorney General of New Jersey, attorney; Larry R. Etzweiler, of counsel and on the brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
Defendant John H. Devlin appeals from his conviction for death by auto and from the sentences imposed on that conviction as well as on his convictions for assault by auto and operating a motor vehicle while under the influence of intoxicating liquor (DWI).
The facts giving rise to this appeal are essentially uncontroverted. On the afternoon of April 24, 1987, defendant, a 24-year veteran of the Linden City Fire Department, attended an awards dinner for policemen and firemen at the Spring Lake Golf Club in Monmouth County. At this function, defendant consumed numerous drinks consisting of scotch and water. Following the dinner, defendant left his automobile at the golf club and accompanied a friend to the latter's store. Defendant's *548 friend entered the store to conduct some business while defendant remained in his friend's automobile and slept.
Approximately two hours later, between 7 p.m. and 7:30 p.m., defendant and his friend left the store and drove to a bar. Defendant continued to drink scotch and water. Defendant and his friend met the nephew of defendant's friend at that bar and subsequently drove to another bar. Defendant declined to drink any more alcohol at the second bar, reasoning that he had "had enough." Thereafter, at some time before 10 p.m., defendant was dropped off by his friend at the golf club where his automobile was parked.
Defendant drove north on Route 34 toward Linden. At approximately 10 p.m., defendant failed to navigate his car through a veer in the roadway as Route 34 changes from two lanes to four lanes, which are divided by a median strip of grass. Instead of bearing right as the northbound road expands from one lane into two, defendant continued straight, driving onto the median strip and striking a traffic sign on the grass. Defendant drove on the grass for several hundred feet before reentering the roadway in the east lane of the two southbound lanes of Route 34. Defendant traveled in the wrong direction in this lane for several hundred feet, apparently under the impression that he was still in the northbound lane of a two-lane highway, before his automobile collided head-on with a smaller automobile being driven by Bobbi Burdge. Ms. Burdge, who was unconscious following the accident, and her passenger, her two-year old daughter, Stephanie, were transported to Jersey Shore Medical Center. Ms. Burdge died on May 1, 1987, as a result of massive head injuries, without having regained consciousness. Stephanie was treated for a concussion and a broken jaw, and released two weeks after the accident.
According to Patrolman John Weighell of the Colts Neck Township Police Department, defendant suffered only a cut lip from the accident. At the scene of the accident, Patrolman *549 Weighell noted the odor of alcohol on defendant's breath and that defendant's movements were uncoordinated and concluded that defendant might have been drinking. Defendant was arrested for DWI before being taken to Riverview Hospital, where a blood test was administered to defendant that indicated a Blood Alcohol Content (BAC) of 0.27%. Defendant was released from the hospital after midnight on April 25, 1987.
The day after the accident, defendant gave a voluntary statement to the police, in which he claimed that he had lost control of his automobile because a tire had gone flat while he was driving. This assertion was refuted at trial by State Trooper Paul Krupa, an expert in reconstructing traffic accidents, who testified that he discovered no evidence that defendant's car had malfunctioned prior to the collision. Additionally, in defendant's statement to the police he failed to mention that he had slept for two hours in a friend's car earlier that evening, or that he had visited two bars between the end of dinner and the time of the accident. Defendant explained at trial that he had not realized the extent of the injuries to the occupants of the other automobile in the accident and that he chose not to inform the police of the full truth because he failed to see at the time why such facts were important.
Three days after the accident, defendant entered an alcohol rehabilitation center, where he remained for approximately five weeks. Subsequent to his discharge, he attended 12 weeks of outpatient rehabilitation and was attending Alcoholics Anonymous sessions at the time of the trial.
Defendant was indicted by the Monmouth County Grand Jury and charged with (1) aggravated manslaughter, a crime of the first degree, in violation of N.J.S.A. 2C:11-4 (First Count); (2) death by auto, a crime of the third degree, in violation of N.J.S.A. 2C:11-5 (Second Count), and (3) assault by auto, a crime of the fourth degree, in violation of N.J.S.A. 2C:12-1c (Third Count). In addition, defendant was charged with several traffic violations, including DWI, in violation of N.J.S.A. 39:4-50. *550 Defendant was tried to a jury and found guilty on the Third Count, assault by auto. While the jury was deliberating, the trial court, based on the proofs before the jury, found defendant guilty of DWI. The jury was unable to reach a verdict, however, regarding the First and Second Counts and, thus, the trial court declared a mistrial as to those two counts. Defendant's motion to dismiss the First and Second Counts of the indictment on double jeopardy grounds was denied by the trial court, which granted, however, the State's motion to vacate defendant's conviction for DWI. Following a retrial, the jury acquitted defendant of aggravated manslaughter on the First Count and convicted him of death by auto on the Second Count. The trial court on the proofs before the jury again convicted defendant of DWI.
The trial court thereupon sentenced defendant to the custody of the Commissioner of the Department of Corrections for a term of five years, with a two-and-one-half-year period of parole ineligibility, for the conviction for death by auto on the Second Count and to a concurrent term of 18 months, with a nine-month period of parole ineligibility, for the conviction for assault by auto on the Third Count, and assessed against defendant a penalty of $5,000, payable to the Violent Crimes Compensation Board (VCCB). In addition, the trial court determined that defendant's DWI conviction was his second offense, and sentenced defendant for that conviction to a 90-day term in the Monmouth County Correctional Institution, to run consecutively to the terms imposed on the indictable offenses; suspended his driver's license for two years, which suspension was to run consecutively to any additional suspension imposed by the Division of Motor Vehicles; fined him $1,000, and surcharged him $100. The trial court denied defendant's request for a stay of the sentences pending appeal. We denied a stay of the sentence imposed for the DWI conviction, but stayed pending appeal the sentences imposed for the convictions for death by auto and assault by auto.

*551 I.
Defendant seeks a reversal of his conviction for death by auto, contending that his conviction for DWI in the first trial should have prevented the subsequent retrial on the charges of death by auto and aggravated manslaughter.[1] Defendant concedes, however, that his acquittal on the charge of aggravated manslaughter renders moot his appeal with respect to that charge.
In State v. DeLuca, 108 N.J. 98 (1987), cert. den., 484 U.S. 944, 108 S.Ct. 331, 98 L.Ed.2d 358 (1987), our Supreme Court stated:
Our analysis begins with the double jeopardy clause of the fifth amendment of the United States Constitution, which provides: "Nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb * * *." Through the due process clause of the fourteenth amendment, this constitutional guarantee applies against the states. Illinois v. Vitale, 447 U.S. 410, 415, 100 S.Ct. 2260, 2264, 65 L.Ed.2d 228, 235 (1980); Benton v. Maryland, 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707, 716 (1969). The parallel provision in the State Constitution is article I, paragraph 11, which provides: "No person shall, after acquittal, be tried for the same offense." We have consistently interpreted the state constitutional double jeopardy protection as co-extensive with the guarantee of the federal Constitution. State v. Dively, supra, 92 N.J. at 573, 578; State v. Barnes, 84 N.J. 362, 370 (1980); State v. Rechtschaffer, 70 N.J. 395, 404 (1976); State v. Wolf, 46 N.J. 301, 303 (1966). [108 N.J. at 101-102.]
The United States Supreme Court has recited the purposes underlying the Double Jeopardy Clause:
The Double Jeopardy Clause "protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." North Carolina v. Pearce, 395 U.S. 711, 717, 23 *552 L.Ed.2d 656, 89 S.Ct. 2072 [2076] (1969) (Footnotes omitted).... Where successive prosecutions are at stake, the guarantee serves "a constitutional policy of finality for the defendant's benefit." United States v. Jorn, 400 U.S. 470, 479, 27 L.Ed.2d 543, 91 S.Ct. 547 [554] (1971) (plurality opinion). That policy protects the accused... from attempts to secure additional punishment after a prior conviction and sentence, see Green v. United States, 355 U.S. 184, 187-188, 2 L.Ed.2d 199, 78 S.Ct. 221 [223-24] 77 Ohio L Abs 202, 61 ALR2d 1119 (1957); cf. North Carolina v. Pearce, supra. [Brown v. Ohio, 432 U.S. 161, 165-166, 97 S.Ct. 2221, 2225-26, 53 L.Ed.2d 187, 194 (1977).]
See also State v. Duthie, 200 N.J. Super. 19, 27-28 (App.Div. 1985), certif. den., 101 N.J. 277 (1985).
The retrial on the charge of death by auto posed no substantial double jeopardy issue because "a prerequisite to the operation of [the double jeopardy bar] is the termination of the former prosecution upon which the claim of double jeopardy is predicated. Justices of Boston Municipal Court v. Lydon, 466 U.S. 294, 308-309, 104 S.Ct. 1805, 1813-14, 80 L.Ed.2d 311, 325 (1984)." State v. Travers, 229 N.J. Super. 144, 149 (App.Div. 1988) (emphasis in original). "[J]eopardy does not terminate when the jury is discharged because it is unable to agree" on a verdict. Richardson v. United States, 468 U.S. 317, 326, 104 S.Ct. 3081, 3086, 82 L.Ed.2d 242, 251 (1984). See also State v. Roach, 222 N.J. Super. 122, 128-129 (App.Div. 1987), certif. den., 110 N.J. 317 (1988); State v. Triano, 147 N.J. Super. 474, 475-476 (App.Div. 1974).
Here, the retrial on the charges of death by auto and aggravated manslaughter was merely a continuation of the first trial, which was incomplete because the jury had been unable to reach a verdict regarding all charges against defendant. Because jeopardy never terminated in the first trial, the DWI conviction in the first trial could not prevent the State from seeking to obtain a determination on all the charges against defendant in a retrial for death by auto and aggravated manslaughter.
Moreover, "[i]n determining whether to apply the double jeopardy bar, the primary concern is whether the second prosecution is for the `same offense' involved in the first." State v. *553 DeLuca, supra, 108 N.J. at 102. Our Supreme Court in State v. DeLuca, supra, set forth two tests to determine whether successive prosecutions are for the "same offense." The first test, known as the "statutory elements" test, requires a comparison of the relevant statutes to determine "whether each provision requires proof of an additional fact which the other does not." Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932). See also State v. DeLuca, supra, 108 N.J. at 103.
As discussed in State v. DeLuca, supra, the offenses of DWI and death by auto are not the same under the statutory elements analysis:
Death by auto requires proof of a death, a fact not required for the proof of drunk driving, N.J.S.A. 39:4-50. Drunk driving, on the other hand, requires proof of defendant's intoxication (or blood alcohol concentration), a fact not required for the proof of death by auto, N.J.S.A. 2C:11-5. Thus, under the traditional Blockburger analysis, drunk driving and death by auto are not the "same" offense, and a conviction or acquittal for one should not bar a subsequent prosecution for another. See State v. Calvacca, supra, 199 N.J. Super. 434. [108 N.J. at 108.]
The second test prescribed in DeLuca, known as the "same evidence" test, requires an analysis of the evidence used to prove the offenses at issue. Here, if the evidence used to prove the element of recklessness for the death by auto conviction was identical to that used to prove intoxication for the DWI conviction, then under the same evidence test the prosecution for death by auto should have been barred by the previous conviction for DWI. State v. DeLuca, supra, 108 N.J. at 108-109. See also Illinois v. Vitale, 447 U.S. 410, 421, 100 S.Ct. 2260, 2267, 65 L.Ed.2d 228, 238 (1980).
Here, the State's evidence as to the recklessness required to convict defendant of death by auto under N.J.S.A. 2C:11-5 established that (1) defendant's BAC that evening registered 0.27%; (2) defendant drove north across a grass median strip into the southbound lanes of Route 34 and continued north until colliding with the victim's automobile; (3) there existed no skid marks or signs of brake application at the scene that would *554 show that defendant was attempting to stop to prevent the accident, and (4) defendant struck a traffic sign without realizing that he had done so. Clearly, the evidence relied upon by the State to establish the recklessness required to prove death by auto went far beyond the mere proof that defendant was intoxicated, which was only a component of defendant's recklessness. As we stated when faced with similar circumstances in State v. Calvacca, 199 N.J. Super. 434 (App.Div. 1985), in reference to an earlier statute that defined death by auto as criminal homicide caused by driving a motor vehicle "carelessly and heedlessly, in a willful or wanton disregard of the rights or safety of others":
Defendant's drunkness was evidential only as to the element of wantonness, but a jury verdict of guilty could have been reached and would have been sustainable solely on the proof that defendant was driving on the wrong side of [the road], irrespective of his drunken condition. [199 N.J. Super. at 439.]
In sum, defendant's claim of double jeopardy is without merit because (1) the mistrial as a result of the hung jury never terminated jeopardy, and (2) death by auto and DWI are not the same offense under either the statutory elements test or the same evidence analysis. Consequently, we hold that double jeopardy principles presented no impediment to defendant's retrial for death by auto in this case.

II.
Defendant also contends that the trial court erred in imposing maximum terms for his convictions for (1) death by auto, (2) assault by auto and (3) a second offense of DWI. Additionally, he argues that the trial court's reasoning for the sentences was unsupported by the facts adduced at trial. We disagree.
The New Jersey Supreme Court in State v. Roth, 95 N.J. 334 (1984), stated:
In this context of appellate review of sentencing, then, an appellate court can perform these review functions within its traditional mode. It can (a) review sentences to determine if the legislative policies, here the sentencing guidelines, were violated; (b) review the aggravating and mitigating factors found below to determine whether those factors were based upon competent credible evidence *555 in the record; and (c) determine whether, even though the court sentenced in accordance with the guidelines, nevertheless the application of the guidelines to the facts of this case makes the sentence clearly unreasonable so as to shock the judicial conscience. [95 N.J. at 364-365.]
See also State v. Mosch, 214 N.J. Super. 457, 461-462 (App.Div. 1986), certif. den., 107 N.J. 131 (1987); State v. Martelli, 201 N.J. Super. 378, 384 (App.Div. 1985).
A person convicted of a third degree offense, such as death by auto, may be imprisoned for between three and five years. N.J.S.A. 2C:43-6a(3). The presumptive sentence for a third degree crime is four years. N.J.S.A. 2C:44-1f(1)(d). A person convicted of a fourth degree offense, such as assault by auto, may be imprisoned for not more than 18 months. N.J.S.A. 2C:43-6a(4). The presumptive sentence for a fourth degree crime is nine months. N.J.S.A. 2C:44-1f(1)(e). In sentencing for crimes of the third or fourth degree, there exists a presumption of nonincarceration if the defendant previously has not been convicted of an offense. This presumption may be overcome if, with reference to the aggravating factors set forth in N.J.S.A. 2C:44-1a, the trial court determines that a prison term is necessary for the protection of the public. N.J.S.A. 2C:44-1e. A defendant who previously has been convicted of a disorderly persons offense qualifies for neither a presumption in favor of incarceration nor a presumption against incarceration. State v. Pineda, 227 N.J. Super. 245, 250-251 (App.Div. 1988), certif. granted, 114 N.J. 508 (1989).
In sentencing a defendant, a trial court must consider the aggravating factors in N.J.S.A. 2C:44-1a and may consider the mitigating factors in N.J.S.A. 2C:44-1b in order to adjust the sentence from the presumptive term up to the maximum or down to the minimum, as justice requires. N.J.S.A. 2C:44-1f(1). In determining the appropriate length of a sentence, a court may raise or lower the term of incarceration from the presumptive term if it finds that either the aggravating factors or the mitigating factors preponderate. State v. Kruse, 105 N.J. 354, 358 (1987); N.J.S.A. 2C:44-1f(1). If a sentencing *556 court is clearly convinced that the aggravating factors in a case substantially outweigh the mitigating factors, it may impose a period of parole ineligibility of up to one-half the imprisonment term set. N.J.S.A. 2C:43-6b; State v. Ghertler, 114 N.J. 383, 388-389 (1989); State v. Bowens, 108 N.J. 622, 639-640 (1987); Kruse, 105 N.J. at 359.
"To provide an intelligible record for review, the trial court should identify the aggravating and mitigating factors, describe the balance of those factors, and explain how it determined defendant's sentence." Kruse, 105 N.J. at 360. See also N.J.S.A. 2C:43-2e; State v. Hartye, 105 N.J. 411, 421 (1987). The sentencing criteria do not demand "that every sentence be a discourse. A brief reference to the reasons for imposing the [sentence], ... a recital of the specific aggravating and mitigating factors found and their balance, and the reasoning that led to the choice of the base and parole ineligibility terms will suffice to explain the sentence." State v. Dunbar, 108 N.J. 80, 97 (1987).
Our Supreme Court has demanded that sentencing courts undertake a qualitative analysis of the relevant factors. The Court has stated that "[m]erely enumerating those factors does not provide any insight into the sentencing decision...." Kruse, 105 N.J. at 363, . Because "[t]he factors are not interchangeable on a one-to-one basis," a sentencing court must articulate the weight it assigned to each factor in determining that the aggravating factors outweighed or, in the case of a parole disqualifier, substantially outweighed the mitigating factors. State v. Roth, supra, 95 N.J. at 368; State v. Morgan, 196 N.J. Super. 1, 5 (App.Div. 1984), certif. den., 99 N.J. 175 (1984).
More specifically, a trial court in sentencing a defendant for death by auto under N.J.S.A. 2C:11-5b must "arrive at the sentence in two steps. The judge must first determine a tentative sentence that comports with the strictures and guidelines that the Code establishes for a third-degree crime. That *557 tentative sentence must then be modified if a modification is necessary to comply with the special requirements of N.J.S.A. 2C:11-5b." State v. Pineda, supra, 227 N.J. Super. at 248-249. N.J.S.A. 2C:11-5b provides that a defendant convicted of death by auto who was operating his motor vehicle while under the influence of drugs or alcohol must serve a minimum custodial term of 270 days, during which the defendant shall be ineligible for parole, or perform a community related service for a minimum of 270 days. In Pineda, supra, we stated that "if the judge tentatively decides, without regard for the statute, that a prison term within the 3 to 5 years range for a third-degree crime would be appropriate, the judge need not modify the sentence because it conforms to the requirements of the statute." State v. Pineda, supra, 227 N.J. Super. at 249 (footnote omitted).
Here, the trial court correctly stated that defendant's previous convictions for disorderly persons offenses rendered inapplicable the presumption either in favor of or against incarceration. The trial court then embarked on a careful and thorough discourse regarding the various aggravating circumstances, including defendant's extreme intoxication in a situation in which he knew he would have to drive home; the far-reaching effects upon the victims' family that resulted from the death of the young wife and mother and the serious injuries to the infant daughter; the risk that defendant would commit another offense, as evidenced by defendant's prior driving record, and the need to deter defendant and others from similar conduct. The trial court concluded its discussion of the applicable aggravating factors as follows:
And so when [defendant] tells me he will never touch another drink that he is remorseful I must take into consideration those kinds of comments. He has not divorced himself from intoxicating liquor. His ambition is to run a bar. His ambition, obviously, is to be around intoxicating liquors. I find it very difficult to find that what has happened in this case has made this significant impression upon him when he says that I still want to be around people who drink alcohol and intoxicating beverages of that nature.
*558 The trial court considered as mitigating factors that defendant had entered a rehabilitation program, had spent time in the armed forces and had encountered problems with family sickness. After reviewing these circumstances, the trial court stated:
And weighing the aggravating factors and weighing the mitigating factors I am clearly convinced in this particular case under the circumstances here that the aggravating factors substantially outweigh the mitigating factors. I am satisfied that a custodial sentence is absolutely necessary. Absolutely necessary and in this case for the purpose of punishment, certainly for the purpose of deterrence and certainly for hopefully for rehabilitative purposes. But I am convinced that those aggravating factors that I refer to are so overwhelming that the mitigating factors fail in comparison to them.
I looked at the reports and there is indication throughout the entire report that lack of remorse by this defendant. And that has been the evaluation of the police officer. That has been the comment that was the evaluation of the person who wrote the pre-sentence investigation report. The investigator who did that. She says: "Throughout the defendant's interview he appeared arrogant and impatient. At no time did the defendant display any signs of remorse for the life that he took or the lives that he has destroyed."
She says, Kathleen Davison, who made the pre-sentence report out, she says "that at the present time her opinion of the defendant is a threat to himself and to society."
I have received an addendum to the report which indicates the very same type of thing. I am hard-pressed to find the defendant believable when he says that he has great remorse.
In any event, as I said, a custodial sentence is what I'm going to impose because I feel it is appropriate under the circumstances.
Furthermore, in denying defendant's request for a stay of incarceration pending appeal, the trial court stated that it was "hard-pressed to say that the community would not be threatened by keeping [defendant] out in the community, and continue to let him drive around under the circumstances."
In light of the foregoing, we are thoroughly convinced that the sentences comply with the provisions of the New Jersey Code of Criminal Justice and resulted from the trial court's meticulous and thorough analysis and balancing of the relevant mitigating and aggravating factors. The need for punishment, deterrence and protection of society in this case far outweighs any reason advanced by defendant for a modification of his sentences. There is no sound basis or justification for us to *559 interfere with these sentences and, contrary to defendant's claims, the trial court's findings as to the mitigating and aggravating factors are supported by the record. In our view, the imposition of the five-year term with a two-and-one-half-year period of parole ineligibility for the conviction for death by auto, the concurrent term of 18 months with a nine-year period of parole ineligibility for the conviction for assault by auto and the consecutive 90-day jail term for the conviction for DWI was neither manifestly excessive nor unduly punitive. The sentences do not constitute a miscarriage of justice and do not shock the judicial conscience. See State v. Roth, supra, 95 N.J. at 362-366. See also State v. Ghertler, 114 N.J. at 388; State v. Whitaker, 79 N.J. 503, 512-517 (1979).
Accordingly, the judgment of conviction and order of commitment under review are affirmed.
NOTES
[1] Defendant does not raise the DWI conviction in the first trial as a bar to the DWI prosecution in the second trial and, therefore, we need not consider that issue. See State v. Calvacca, 199 N.J. Super. 434, 440 n. 1 (App.Div. 1985). Moreover, there is no proof in the record before us that defendant raised double jeopardy as a defense to the second DWI prosecution prior to the second trial and, consequently, defendant has waived such a defense. R. 3:10-2. See also State v. Samarel, 231 N.J. Super. 134, 139 (App.Div. 1989). In any event, N.J.S.A. 2C:1-9c implicitly permits a retrial on a charge where a conviction has been reversed or vacated.