231 N.J. Super. 134 (1989)
555 A.2d 40
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
KENNETH M. SAMAREL, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted January 25, 1989.
Decided March 10, 1989.
*136 Before Judges KING, BRODY and SKILLMAN.
Francis X. Moore, attorney for appellant (Michael R. Speck, on the brief).
John Kaye, Monmouth County Prosecutor, attorney for respondent (Mark P. Stalford, Assistant Prosecutor, of counsel).
The opinion of the court was delivered by BRODY, J.A.D.
After trying the matter de novo on the record made in a municipal court, the Law Division found defendant guilty of *137 having a blood alcohol concentration of .10% or more by weight of alcohol in his blood while operating a motor vehicle (DWI).[1]N.J.S.A. 39:4-50(a). We stayed the sanctions imposed pending this appeal.
At about 2:30 a.m., Christmas 1985, defendant, then 17 years old, failed to negotiate a curve and drove his car off the road. The car tumbled down a slope and landed on its roof in a field. Defendant's girlfriend, one of his four passengers, was seriously injured in the accident. She was still in a coma at the time of the municipal court trial more than a year and a half later.
When the police first arrived at the scene, defendant told an officer that the accident occurred when he lost control of his car while it was travelling 65 miles an hour. Defendant and the passengers were transported to a hospital where defendant received out-patient treatment and was then released to an officer who drove him to headquarters to administer a breathalyzer test. Defendant had refused the officer's request to have his blood tested at the hospital.
Defendant waived his Miranda rights at 5:40 a.m., soon after he arrived at headquarters. The officer thereafter asked him the usual preliminary questions before administering a breathalyzer test. In the course of answering those questions, defendant admitted that he had consumed "five shots" of Southern Comfort at a friend's house from 10:30 p.m. earlier that night until 12:15 a.m. The officer administered the test twice, using a Draeger breathalyzer. Both tests, one administered at 5:51 a.m. and the other at 6:00 a.m., produced a reading of .10% blood alcohol.
At first defendant was charged with juvenile delinquency for committing what would otherwise have been a fourth-degree *138 assault by auto upon his girlfriend. N.J.S.A. 2C:12-1c. The elements of the offense are "recklessly" driving a vehicle so as to cause another "serious bodily injury." On July 1, 1986, a family part judge signed an order "that the case be dismissed with prejudice." The order does not recite any reasons for its entry. Defendant has not presented us with a transcript of proceedings that might shed light on the matter and he offers no explanation for why the order was entered. When the Law Division judge asked defendant's present attorney, who did not represent defendant in the family part, what he knew of the matter he replied:
Why Judge to this very minute, I don't know why that dismissal took place. I've reviewed this file thoroughly.
When the judge then asked for a transcript of the family part proceedings, defendant's attorney responded:
[DEFENDANT'S ATTORNEY]: Judge, we have never obtained that transcript.
THE COURT: Why?
[DEFENDANT'S ATTORNEY]: That I cannot answer.
* * * * * * * *
I cannot with all sincerity sit before, your Honor, or stand before, your Honor, and give your Honor a reason or excuse as to why that transcript was never obtained; but it wasn't.
The matter was dismissed with prejudice.
Relying solely on State v. DeLuca, 208 N.J. Super. 422 (App. Div. 1986), defendant contends that the present prosecution unconstitutionally places him in jeopardy a second time for essentially the same charge that the family part judge had dismissed with prejudice. We note that counsel for neither party called to our attention that the Supreme Court reversed DeLuca more than a year before defendant filed his brief in this appeal. State v. DeLuca, 108 N.J. 98 (1987). The issue in that case was whether double jeopardy barred trial of a defendant for DWI after she had been acquitted by a jury of causing a death by auto. The Supreme Court remanded the matter to the Law Division to determine whether in attempting to prove the recklessness element of death by auto the State had relied solely on the defendant's intoxication. "If, however, other *139 evidence was adduced, the DWI prosecution will not be barred." Id. at 109.
Our main concern here, not addressed in defendant's brief, is the preliminary question of whether jeopardy ever attached in the family part action. When he argued the matter in the municipal court, defendant's present attorney contended that jeopardy attached "the minute [the family part complaint] was filed." The law is clearly otherwise. "In a nonjury trial [jeopardy] attaches when the first witness is sworn." State v. Lynch, 79 N.J. 327, 341 (1979). Defendant concedes that no witness had been sworn before the family part action was dismissed.
We are left with the question of whether the notation "with prejudice" in the order of dismissal was fairly understood by defendant to be a bar to a later DWI prosecution:
In applying the prohibition against double jeopardy, the emphasis should be on underlying policies rather than technisms. The primary considerations should be fairness and fulfillment of reasonable expectations in the light of the constitutional and common law goals. [State v. Currie, 41 N.J. 531, 539 (1964).]
Dismissal of criminal charges may or may not bar a later prosecution, depending on whether the dismissal was grounded on bases related to guilt or innocence. State v. Lynch, 79 N.J. at 342. Ordinarily a dismissal before trial does not bar later prosecution. State v. Fary, 16 N.J. 317, 324-325 (1954).
Given the evidence in the record of the present trial, it seems highly unlikely that the dismissal of the assault charge was related to defendant's guilt or innocence. We would have to know the circumstances of that dismissal to know whether defendant fairly understood that the family part judge used the expression "with prejudice" in order to bar a later DWI prosecution. Having chosen not to inform us of those circumstances, defendant cannot expect us to sustain his double jeopardy defense by assuming that those circumstances gave him a legitimate expectation that he would not later be charged with DWI.
*140 Defendant next argues that the results of a Draeger breathalyzer may not be used as evidence because the State failed to demonstrate that the breathalyzer used to test defendant, a Draeger model 900, had been approved by the Attorney General as required by N.J.A.C. 13:51-3.2. See N.J.S.A. 39:4-50.3 and N.J.S.A. 12:7-56. The argument is without merit. N.J.A.C. 13:51-3.5 expressly provides that the Attorney General has approved the "Breathalyzer, Model 900." Defendant's attorney conceded in his argument below that the "Administrative Code [does] not, specifically ... approve a manufacturer and I concede that." The Attorney General did not limit his approval to any particular manufacturer's model 900 breathalyzer. Also, N.J.A.C. 13:51-3.4 directs "[p]eriodic inspections of all approved instruments ... by a Breath Test Coordinator/Instructor." As noted below, the breathalyzer used to test defendant was periodically inspected by a coordinator so it may reasonably be inferred that the Attorney General had approved its use.
We do not agree with defendant's argument that the Supreme Court has approved the use of Smith and Wesson's breathalyzer model 900 to the exclusion of other manufacturers' breathalyzer models 900. Romano v. Kimmelman, 96 N.J. 66, 82 (1984) held that
models 900 and 900A are scientifically reliable for the purpose of determining the content of blood alcohol.... In addition, we hold that the results of a breathalyzer test shall be generally admissible in evidence when the breathalyzer instrument is in proper working order, is administered by a qualified operator and is used in accordance with accepted procedures, and that such results may, upon the establishment of these conditions, form the basis upon which a conviction of violating N.J.S.A. 39:4-50 may be obtained.
Although in its opinion the Supreme Court referred only to Smith and Wesson breathalyzers, that was simply because Smith and Wesson was the manufacturer of the breathalyzer models whose use was challenged in that case.
Defendant does not suggest that the Draeger breathalyzer model 900 is in any way different from the Smith and Wesson *141 model 900. The description of the Smith and Wesson breathalyzer and the method of its operation appearing in the Romano opinion, id. at 79-89, is essentially the same as the description of the Draeger breathalyzer and the method of its operation appearing in the record of this case.
Defendant next argues that the State failed to establish that the breathalyzer used for testing defendant on December 25, 1985, was then in proper working order. The State presented a certificate that the machine was in proper working order on December 3, 1985, when Trooper Stephen Kovacs, the breath test coordinator/instructor who periodically inspected the machine, last inspected it before it was used to test defendant. Trooper Kovacs testified that on January 6, 1986, the date of his next periodic inspection, "the instrument completely shut down and lost power." He removed the machine from service and, after it had been repaired, returned it to service January 9, 1986, "restored to proper operating condition."
Trooper Kovacs explained that the loss of power would not have affected the accuracy of the machine when it had power:
Q Do you know if the malfunction, the defect that you observed on January 6th, 1986 would have had any effect on readings obtained by the breathalyzer operator during the course of breathalyzer work  I'm sorry, during the course of drunk driving investigations?
A It's my opinion that this particular defect on this instrument would have had no effect on any breathalyzer readings.
Q Why is that?
A The defect was apparently intermittent. If the defect we'll say manifested itself during the time of a breath test, the instrument would be rendered inoperable, completely inoperable and no results would be obtained from the breathalyzer instrument.
Defendant does not challenge Trooper Kovacs' opinion, which forms an adequate basis for the trial judge's finding that the machine was in proper working order when it was used to test defendant. State v. Johnson, 42 N.J. 146, 162 (1964).
Defendant's sole argument respecting the breathalyzer's operability is that

*142 the State failed to provide evidence of a proper certificate that the Breathalyzer machine used on the defendant was accurate and in proper functioning order. See State v. Hudes, 128 N.J. Super. 589 (1974). Also see State v. Hardy, 211 N.J. Super. 630 (1986).
In view of the pretest certification that the machine was in proper working order, we assume that defendant's point is that the results of a breathalyzer test are inadmissible unless there is also a post-test certification that the machine was in proper working order. Defendant cites no authority for such an absolute requirement. In the cases he cited there were both pretest and post-test certifications, but the court in neither case said that breathalyzer results would be inadmissible in the absence of a post-test certification. In State v. Hudes, 128 N.J. Super. 589, 597-598 (Cty.Ct. 1974), Judge Petrella referred with apparent agreement to the holding in State v. Lanahan, 110 N.J. Super. 578 (Cty.Ct. 1970), that test results are admissible even though there is only a pretest certificate in evidence. In State v. Hardy, 211 N.J. Super. 630, 634 (App.Div. 1986), we held that breathalyzer results are not admissible without foundation testimony that "the equipment was in proper order" but we did not impose an absolute ban on the admissibility of such evidence in the absence of a post-test certificate.
Although presenting at trial a post-test certification that a breathalyzer is in proper working order is the preferred practice, a test result may be admissible without a post-test certification if, as here, there is a pretest certification made within a month before the test that the machine was in proper working order and there is no evidence that the machine gave inaccurate results when used for the test.
Defendant next argues that the breathalyzer test results were inadmissible because the tests were not conducted within a reasonable time after defendant had been driving, as required by State v. Tischio, 107 N.J. 504 (1987), app. dism. ___ U.S. ___, 108 S.Ct. 768, 98 L.Ed.2d 855 (1988). Defendant has not demonstrated that he was prejudiced by the lapse of time between either the time when he was driving or *143 when he was arrested and the time when the tests were administered. Nor has defendant demonstrated that his detention was unduly prolonged. In the absence of such evidence, it cannot be said that the tests were administered an unreasonably long time after either his driving or arrest. State v. Dannemiller, 229 N.J. Super. 187 (App.Div. 1988).
We adhere to the view that a defendant charged with DWI is not entitled to a trial by jury. State v. Linnehan, 197 N.J. Super. 41 (App.Div. 1984), certif. den., 99 N.J. 236 (1985); Blanton v. City of North Las Vegas, Nevada, ___ U.S. ___, 109 S.Ct. 1289, 103 L.Ed.2d 550 (1989).
We reject defendant's final argument that because he had not yet waived his Miranda rights, the court erred in considering that he told an officer at the scene of the accident that he was driving 65 miles an hour when he lost control of his car. Berkemer v. McCarty, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). Besides, the evidence was not relevant to the finding of guilt.
Affirmed.
NOTES
[1] Although there was independent evidence that defendant had operated the vehicle while under the influence of intoxicating liquor, the trial judge did not consider that alternative as a basis for conviction.