**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3737-15T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

DAWN M. MILKOSKY,

    Defendant-Appellant,

_____

Submitted May 23, 2017 — Decided June 8, 2017

Before Judges Fisher and Vernoia.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Municipal Appeal No. 15-049.

Michael A. Grasso, attorney for appellant (Christopher J. Grenda, on the briefs).

Fredric M. Knapp, Morris County Prosecutor, attorney for respondent (Paula Jordao, Assistant Prosecutor, on the brief).

PER CURIAM

Following the denial of defendant Dawn M. Milkosky's motion to suppress the results of a blood alcohol test, she entered a conditional plea of guilty to driving while intoxicated (DWI), N.J.S.A. 39:4-50, in the Kinnelon Municipal Court. See R. 7:5-

2(c)(2); State v. Greeley, 178 N.J. 38, 50-51 (2003). She appealed, and the Law Division, after conducting a de novo hearing, entered an order denying her suppression motion. Defendant appeals the court's order. We affirm.

I.

The evidence presented at the suppression hearing showed that at about 6:15 p.m. on April 16, 2015, defendant was involved in a single vehicle accident. Defendant's vehicle was overturned and there was a small fire in the front of the vehicle. Defendant was unconscious and, secured by her seatbelt, she hung upside down in the driver's seat. Kinnelon police officers, who were dispatched to the scene, pulled defendant from the vehicle just prior to it being engulfed in flames.

Defendant remained unconscious and had a faint pulse. The officers administered first aid and detected an odor of alcohol coming from defendant. Within fifteen to twenty minutes of the accident, defendant was transported by helicopter to Morristown Memorial Hospital.

The road where the accident occurred was closed for several hours. The local fire department and members of the sheriff's department also responded.

Kinnelon police detective Patrick McDonnell was on duty. He was assigned to block-off the road where the accident occurred and

direct traffic. At some point, McDonnell was dispatched to the hospital to obtain a sample of defendant's blood.

McDonnell testified at the suppression hearing that defendant was conscious when he met with her at the hospital. McDonnell introduced himself as a detective with the Kinnelon police department. He asked defendant for her name, date of birth, social security number, and address, and she provided the information. Defendant did not remember how the crash occurred or how she had arrived at the hospital. She inquired about her vehicle, and McDonnell said it was most likely destroyed by fire.

McDonnell testified that defendant explained that at the time of the accident, she was driving to a friend's house. She asked McDonnell to notify her friend about the accident, and provided McDonnell with her friend's name, address, and phone number. The information defendant provided was accurate; at some point, McDonnell called and spoke to the friend.

During McDonnell's conversation with defendant, he again informed her that he was a Kinnelon police detective. He asked if she would consent to provide a blood sample, and informed her she had the option of saying yes or no. In response, defendant said "yes" and lifted up her arm toward McDonnell. He provided defendant with a consent form, which she signed with a "squiggly line" above the signature line.

According to McDonnell, defendant's blood was drawn at 8:30 p.m. McDonnell did not believe he had time to obtain a warrant because the police had "very little manpower and it would take too long." He testified he would have had to call the prosecutor's office to obtain a warrant. He did not attempt to obtain a warrant because, he "had [defendant's] consent and . . . time had passed and it would have taken a very long time to get the warrant [based on his] past experiences."

Dr. Gooberman, an internist, testified that defendant sustained a head injury, and had short-term memory loss. He testified defendant was given fluids upon her arrival at the hospital, but was not given any "mood altering drugs."[1]

Defendant was charged with driving while intoxicated, N.J.S.A. 39:4-50, and other motor vehicle offenses. She filed a motion to suppress the results of the blood test, claiming the warrantless blood draw violated her right to be free from unreasonable searches and seizures under the United States and New Jersey Constitutions. The municipal judge denied defendant's

---

[1] Gooberman also testified short-term memory loss "impacts the ability to give [] consent." However, he did not provide any support for his conclusion, and the court ruled Gooberman was qualified to testify only as a general medical doctor, and could not testify whether defendant "was of sound mind while rendering her consent." The judge's ruling is not challenged on appeal and, as such, we do not address it.

A-3737-15T3

motion to suppress. Defendant entered a conditional plea of guilty to driving while intoxicated, and the remaining charges were dismissed.

Defendant appealed to the Law Division. The court found defendant consented to the blood draw, and the warrantless blood draw was otherwise constitutional under the exigent circumstances exception to the warrant requirement. The Law Division entered an order denying defendant's suppression motion. This appeal followed.

On appeal, defendant makes the following arguments:

POINT I

THE WARRANTLESS BLOOD DRAW WAS NOT OBTAINED THROUGH CONSENT AND THE STATE CANNOT OVERCOME THE WARRANT REQUIREMENT THROUGH EXIGENCY [].

POINT II

EXCLUSION OF [DEFENDANT'S] BLOOD TEST RESULTS IS REQUIRED BECAUSE THE BLOOD DRAW WAS NOT DONE WITHIN A REASONABLE TIME OF HER OPERATION OF THE MOTOR VEHICLE (Raised Below, However, Not Addressed in Lower Rulings).

## II.

In our review of the Law Division's decision on a municipal appeal, "[w]e review the action of the Law Division, not the municipal court." State v. Robertson, 438 N.J. Super. 47, 64 (App. Div. 2014), certif. granted, 221 N.J. 287 (2015). "Unlike the Law Division, which conducts a trial de novo on the record, Rule 3:32-

8(a), we do not independently assess the evidence." State v. Gibson, 429 N.J. Super. 456, 463 (App. Div. 2013), rev'd on other grounds, 219 N.J. 227 (2014). We consider "whether the findings made could reasonably have been reached on sufficient credible evidence present in the record." State v. Stas, 212 N.J. 37, 49 (2012) (quoting State v. Locurto, 157 N.J. 463, 471 (1999)). However, we owe "no such deference . . . to the Law Division or the municipal court with respect to legal determinations or conclusions reached on the basis of the facts." Ibid.; see also State v. Handy, 206 N.J. 39, 45 (2011) ("appellate review of legal determinations is plenary").

Defendant contends the court erred because there was insufficient evidence supporting its determination she consented to the blood draw. Defendant argues the "indisputable facts indicate that [she] was suffering from a lack of lucidity that prevented her from having the ability to legally provide consent." We disagree.

The United States and New Jersey Constitutions guarantee "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7. "As the United States Supreme Court has recognized, 'a "compelled intrusio[n] into the body for blood to be analyzed for alcohol content" must

be deemed a Fourth Amendment search.'" State v. Adkins, 221 N.J. 300, 309 (2015) (quoting Skinner v. Ry. Labor Execs. Ass'n, 489 U.S. 602, 616, 109 S. Ct. 1402, 1412, 103 L. Ed. 2d 639, 659 (1989)).

"Any warrantless search is prima facie invalid, and the invalidity may be overcome only if the search falls within one of the specific exceptions created by the United States Supreme Court." State v. Hill, 115 N.J. 169, 173 (1989). The State has the burden of proving the existence of an exception by a preponderance of the evidence. State v. Amelio, 197 N.J. 207, 211 (2008), cert. denied, 556 U.S. 1237, 129 S. Ct. 2402, 173 L. Ed. 2d 1297 (2009).

"Federal and New Jersey courts recognize the consent to search exception to the warrant requirement." State v. Lamb, 218 N.J. 300, 315 (2014). "It is, of course, fundamental that consent to search must be voluntary." State v. Chapman, 332 N.J. Super. 452, 466 (App. Div. 2000). "To determine whether a person voluntarily consented to a search, the focus of the analysis is 'whether a person has knowingly waived [the] right to refuse to consent to the search.'" Lamb, supra, 218 N.J. at 315 (quoting State v. Domicz, 188 N.J. 285, 308 (2006)). In addition, "under the New Jersey Constitution, a consent to search is valid only if the person giving consent has knowledge of [the] right to refuse." Chapman, supra, 332 N.J. Super. at 466. "The State has the burden

of proving consent was given freely and voluntarily." Lamb, supra, 218 N.J. at 315.

Here, defendant contends the evidence requires the conclusion that, due to injuries sustained in the accident, she was incapable of providing voluntary consent to the requested blood draw. We find no support in the record for defendant's contention and are satisfied the record amply supports the court's determination that defendant voluntarily and knowingly consented to the blood draw. She spoke coherently with the officer, correctly provided detailed and accurate information, explained what she had been doing prior to the accident, and expressed concern about her vehicle. She responded affirmatively to McDonnell's request for the blood draw, signed the consent form, and extended her arm towards the officer. See Birchfield v. North Dakota, __ U.S. __, 136 S. Ct. 2160, 2185, 195 L. Ed. 2d 560, 588 (2016) ("It is well established that a search is reasonable when the subject consents . . . and that sometimes consent to a search need not be express but may be fairly inferred from context.") (citations omitted).

Moreover, there was no evidence demonstrating that any injury sustained by defendant actually interfered with her ability to understand her rights, or knowingly and voluntarily waive them. Gooberman testified defendant sustained a moderate sized left super orbital subcutaneous hematoma, but offered no opinion that

the injury affected defendant's ability to provide consent. Gooberman testified plaintiff suffered short-term memory loss that "impact[ed] . . . the ability to give . . . consent." He did not, however, testify the injury rendered her unable to provide knowing and voluntary consent to McDonnell's blood draw request.

We therefore discern no basis in the record to reverse the court's finding that, despite defendant suffering some injury in the accident, she knowingly and voluntarily consented to the blood draw. See State v. Warmbrun, 277 N.J. Super. 51, 64 (App. Div. 1994) (finding the defendant voluntarily waived his Miranda[2] rights where "although defendant was very intoxicated, he was capable of communicating and . . . was responsive in answering questions and could answer correctly questions such as his name, age, etc."), certif. denied, 140 N.J. 277 (1995).[3]

Defendant also argues the court erred by denying the suppression motion because the blood draw did not take place within a reasonable time. We find insufficient merit in the argument to

---

[2] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[3] Because we are convinced the court correctly determined that defendant knowingly and voluntarily consented to the blood draw, it is unnecessary to consider defendant's argument the court erred by finding the blood draw was lawful under the exigent circumstances exception to the warrant requirement.

A-3737-15T3

warrant discussion in a written opinion, R. 2:11-3(e)(2), other to note the following.

Defendant relies on State v. Tischio, 107 N.J. 504, 506 (1987), app. dism., 484 U.S. 1038, 108 S. Ct. 768, 98 L. Ed. 2d 855 (1988), where the Court determined that a defendant may be convicted of driving while intoxicated under N.J.S.A. 39:4-50 when a chemical breath test "is administered within a reasonable time after the defendant was actually driving [the] vehicle" shows a blood alcohol level exceeding the statutory limit.[4] See also State v. Marquez, 202 N.J. 485, 511 (2010) ("[B]ecause breath sample evidence 'is evanescent and may disappear in a few hours,' police must administer the breathalyzer test within a reasonable time after the arrest in order to obtain an accurate reading") (quoting State v. Widmaier, 157 N.J. 475, 487 (1999)).

In State v. Dannemiller, 229 N.J. Super. 187, 190 (App. Div. 1988), we observed that the Tischio Court's concern about the "invasion of [a defendant's] rights by prolonged detention" was the "primary reason for requiring the administration of [alcohol breath] tests within a reasonable time of operation or arrest as

---

[4] The majority opinion in Tischio also concluded that alcohol breath tests administered during an investigation in a driving while intoxicated case "must be taken 'within a reasonable time' after the arrest." Tischio, supra, 107 N.J. at 521. Defendant was not under arrest at the time of the blood draw at issue here.

no scientific basis for the requirement has been demonstrated." We determined that in assessing whether there was unreasonable delay, "[e]ach case must . . . be examined . . . to determine whether the motorist's rights have been violated by undue delay." Ibid.

In Dannemiller, we further determined the court properly rejected the defendant's claim there was a violation of Tischio's "unreasonable time principle" because he failed to show "prejudice or reason to doubt the accuracy of the" chemical breath tests, and failed to make any "claim of prolonged detention or of any intervening imbibing of an alcoholic beverage, illness, or untoward event which might affect his condition." Ibid. For the same reason, we reject defendant's claim here. Defendant was promptly removed from the accident scene and taken to the hospital for medical reasons, was never detained by police prior to the blood draw, and there is no evidence that, during the two hour and fifteen minutes that elapsed from the occurrence of the accident to the blood draw, there was an intervening incident that might have affected defendant's condition. Defendant does not claim she suffered any prejudice as a result of the purported delay and there is no evidence showing the delay affected the accuracy of the blood tests.

11                                                              A-3737-15T3

Moreover, given the nature of the accident, the need to transport defendant to a medical facility and all of the attendant circumstances, the two-hour-and-fifteen-minute delay in obtaining the blood draw was not unreasonable. See State v. Samarel, 231 N.J. Super. 134, 142-43 (App. Div. 1989) (finding defendant failed to show there was an unreasonable delay in administering chemical breath tests where they were administered almost three-and-a-half hours after a motor vehicle accident).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3737-15T3